A. H. HITCHLER ET AL. V. T. H. SCANLAN ET AL.

No. 2827.

1.  **Limitation—Charge.**—Where limitations of five and ten years are set up as a defense, and there is no evidence of payment of taxes, it is error to submit to the jury the defense of five years limitation, and such error is material unless the testimony was such as to authorize a charge to find for the defense upon the issue of ten years limitation.

2.  **Constructive Possession.** — Where a party entered upon land under a deed, the constructive possession ceases upon his conveyance of a part of the tract, as to the part so conveyed. Upon the subsequent reconveyance to him his constructive possession will not begin until there is an actual possession of such part. In this case the tract had been subdivided into tracts of two acres each, and the constructive possession would not extend save as to lots upon which there was some actual tenancy.

3.  **Description in Deed.** — Frost owned lot 11 of the Luke Moore league, containing 148 acres. He sold parts of the lot. In the administration of his estate, and for purpose of partition, the interest in the lot belonging to the estate was regularly sold, estimated at 68 acres. Plaintiffs showing title under such sale, it being conceded that the Frost title was good, would be entitled to recover all of such tract not shown to have been disposed of by Frost, in absence of defense of limitation.

APPEAL from Harris. Tried below before Hon. JAMES MASTERSON. The opinion states the case.

*G. W. Thorp* and *Charles E. Dwyer*, for appellants.—1. It was error, calculated to confuse and mislead the jury, for the court to charge upon the question of title under the statute of five years limitation, under Ingraham's possession; because there was no offer to prove that he ever paid any taxes on the land in possession, nor that he claimed under a deed duly registered; because no attempt was made to show under what deed he claimed the land of which he was in possession. Murphy v. Welder, 58 Texas, 235; Pearson v. Boyd, 62 Texas, 541; Veramendi v. Hutchins, 56 Texas, 414.

2. The defendants Scanlan and Cage having failed to show any legal title to any of the land in controversy, could only recover upon their pleas of limitation; and having wholly failed, either by the pleadings or by the evidence to fix the location, extent, or boundaries of their possession, or that of those under whom they claim, the jury was not authorized to render a verdict in their favor for any portion of the land claimed by them, and the verdict and judgment should have been set aside and a new trial granted. Veramendi v. Hutchins, 56 Texas, 414.

*E. P. Hamblen,* for appellees.— 1. In a suit of trespass to try title the burden of proof remains with the plaintiff; he must not only prove his title, but must be able to identify and designate the particular parcel of land he claims with such certainty that an officer in executing

a writ of possession under the judgment of the court based thereon can place the plaintiff in possession of the land recovered; and the appellants having failed to show themselves entitled to any particular portion of lot No. 11, judgment was properly rendered against them. Rev. Stats., art. 4786, par. 2; Devine v. Keller, 73 Texas, 365; McNamara v. Muensch, 66 Texas, 70; Koenigheim v. Miles, 67 Texas, 120.

2. If the plaintiffs were not entitled to recover, it is immaterial if the court made errors in its charge or judgment on defendants' title or questions of limitation.

3. The evidence conclusively proved that Ingraham, under whom these appellees claim their respective portions of the land, had title to the same under the ten years statute of limitation. A verdict against them on that plea would have been set aside; therefore any error in the charge in reference thereto is immaterial.

COLLARD, JUDGE, *Section A.*—This suit—trespass to try title—was brought September 5, 1888, by A. H. Hitchler and his wife Mary Hitchler, the appellants, against T. H. Scanlan, R. K. Cage, and Harriet Sellers, for a tract of land, part of the upper half of the Luke Moore league, in Harris County, known as lot No. 11, containing 148 acres, a subdivision of the league less 15 acres, sold by S. M. Frost to Parker and Donovan out of the northeast corner of lot No. 11.

It seems that lot No. 11 was or had been subdivided into lots of two and two and one-half acres at sometime, and of these Mrs. Sellers claimed in her answer lots 19 to 39 inclusive, describing the land by metes and bounds as 54½ acres, and disclaimed all the rest of the survey.

November 7, 1889, M. D. Milsop, joined by her husband and G. T. Yeager, intervened, claiming title to lots 11 to 39 inclusive, describing by numbers of lots only.

November 8, 1889, T. H. Scanlan amended his original answer, filed general denial as to plaintiffs and intervenors, pleaded limitation of five and ten years, and set up claim to 58 acres of lot No. 11, describing the same by metes and bounds; and claiming by deed through one R. C. Ingraham, who originally purchased a part of the land from S. M. Frost, and afterward 25 acres from E. A. Palmer, 15 acres from H. H. Cone, and 18 acres from Harriet George.

Scanlan alleges, that the 58 acres bought by him and one Trube from R. C. Ingraham in 1862 included the identical tracts sold by Palmer, Cone, and George to Ingraham. Defendant Cage adopts the answers of Scanlan so far as applicable, pleads limitation, and claims title to 21 acres out of lot 11, sold to him by Ingraham.

The trial resulted in a verdict and judgment for defendants, from which plaintiffs and intervenors have appealed.

In order that the questions raised on appeal may be understood, it is necessary to set out the facts as to title.

It was admitted by all the parties·that S. M. Frost owned the 148 acres, or lot 11, as it is called, out of the upper half of the Moore league. The survey is correctly described in the petition, bounded on the north by the league north line, on the east by lot 12 subdivision of the league, on the south by lot 14, and on the west by lot 10.

Plaintiffs deraign title as follows: Frost died testate in 1866; his will was probated in Fort Bend County, Texas, in 1866. His wife Virginia M. and several children, including plaintiff Mrs. Hitchler, were his only heirs and devisees. Under orders of the Probate Court the interest of the estate in lot No. 11, estimated at 68 acres (Frost having sold off portions of it), was sold for purposes of partition, and bought in by W. P. Hamblen, July 25, 1875, who conveyed it to Virginia M. Frost, widow of deceased, December 1, 1875. N. Mayblem purchased the same at sale under execution against Mrs. Frost, February 1, 1876. He died, leaving his wife Sophia his only heir, who conveyed the same land to Mrs. Hitchler, the plaintiff, August 14, 1888. Mrs. Virginia M. Frost also conveyed the same to Mrs. Hitchler, November 11, 1889. These conveyances put the title to the survey in Mrs. Hitchler, except such parts as Frost had sold in his lifetime. Plaintiffs read in evidence a deed by Frost to Levi Parker and A. S. Donovan to 15 acres out of the northeast corner of lot No. 11, described by metes and bounds.

Defendants Scanlan and Cage read in evidence other conveyances from Frost to R. S. Redmon, recorded May 29, 1839, to lots 11 to 19, said to contain 18 acres, according to plat of subdivision of lot No. 11 made by F. W. Herman, adjoining land sold by Frost to Boyd & Compton. Redmon sold these lots to J. N. Kerr by deed recorded February 15, 1841, and Kerr sold the same to R. C. Ingraham by deed recorded February 23, 1841. Harriet George also conveyed the same lots to Ingraham, she having derived her title by sale under execution against Redmon.

Frost also sold lots 3 to 10 inclusive, or 16 acres out of lot 11, according to Herman's plat, to Jesse Randell, April 18, 1839; these lots are traced into one Kenedy as the present owner. Frost also conveyed to R. C. Ingraham by deed recorded March 1, 1841, lots 20 to 39 inclusive, each said to contain two acres more or less, out of lot No. 11. These are all the sales shown to have been made by Frost, to-wit: 15 acres to Parker and Donovan (it seems this survey is not in controversy); lots 11 to 19, or 18 acres, to Redmon; lots 3 to 10 inclusive, or 16 acres, to Jesse Randell; and lots 20 to 39 inclusive, two acres each, to Ingraham; in all about 89 acres. The locality of these lots is not shown by the testimony, nor can they be identified. If there ever was a map or plat of them showing how they were numbered from north to south or otherwise, it can not be found.

Parker sold the east half of the 15 acres conveyed by Frost to him and Donovan to Ingraham, and Ingraham also acquired title to the

lots sold to Redmon, by deed of Redmon to J. N. Kerr, recorded February 15, 1841, and by deed from Kerr to himself, recorded February 23, 1841; and also from Redmon by sale under execution against the latter to B. Canfield, in the administration of whose estate the same were set aside to Harriet George, who conveyed to Ingraham.

It is claimed by Scanlan and Cage that R. S. Ingraham had acquired title to the land claimed by them by limitation and conveyances.

June 9, 1862, Ingraham conveyed to Scanlan and one Trube 58 acres out of lot 11 by metes and bounds, misdescribing the land intended to be conveyed; but after Trube conveyed his half of it to Scanlan, August 8, 1863, Scanlan by suit against the estates of Ingraham and Trube had the field notes corrected and the land described as in his amended answer. So it may be said he has Ingraham's deed to the 58 acres claimed by him. Cage claims by deed from Ingraham recorded July 11, 1859, 21 acres of lot 11, described as in his answer, save some unimportant inaccuracies.

The evidence of Scanlan and Cage shows, that on the 23d of March, 1844, Ingraham mortgaged lots 19 to 66 inclusive, said to contain 2½ acres each, "including Ingraham's improvements where he then lived," out of lot No. 11, to one A. B. Worsham to secure the payment of certain notes. The mortgage was duly foreclosed December 8, 1848, order of sale issued April 3, 1849, and the lots 19 to 66 were sold thereunder to Worsham, the lots containing 2½ acres each, "including the improvements where Ingraham now lives." Worsham conveyed to H. H. Cone by deed recorded July 31, 1849, lots 19 to 56 inclusive, each containing 2½ acres, and Cone conveyed to Ingraham by deed recorded July 9, 1853, lots 51 to 56. Worsham conveyed to E. A. Palmer lots 56 to 66 inclusive, 2½ acres each, by deed recorded July 16, 1849, and these lots Palmer conveyed to Ingraham July 12, 1853. The Palmer deed to Ingraham in fact conveys lots 51 to 66 inclusive. The lots conveyed by Frost to Redmon and acquired by Ingraham had not been mortgaged, to-wit, lots 11 to 18 inclusive.

Mrs. Sellers deraigned her title to lots 19 to 39 inclusive from Cone in regular course, leaving other of the lots still in Cone.

The title of Milsop and Yeager, intervenors, is derived as follows: Deed from Ingraham to A. P. Thompson, dated March 17, 1846, duly recorded April 11, 1846; deed with full covenants of warranty reciting consideration of $500 cash in hand paid, conveying lots 11 to 39 inclusive, out of lot No. 11, described in the deed as the property then owned and occupied by the said Robert C. Ingraham as a residence. M. D. Milsop and Yeager are the sole surviving heirs of A. P. Thompson, now deceased.

There was testimony adduced by defendants on the trial which may have established the fact that Ingraham was in possession of a part of lot No. 11 even more than ten years prior to the suspension of the stat-

ute of limitation from the 28th day of January, 1861, to March 30, 1870. The court submitted the question of title by limitation of ten years in favor of Scanlan and Cage and those under whom they claim according to their respective pleas. He also instructed the jury as follows:

"If from the evidence you find that Scanlan and Cage bought from Ingraham, and Ingraham bought from Palmer in July, 1853, the same land he sold to them respectively, and that he, Ingraham, went into actual possession under his deed, duly registered, and continued such possession, cultivating, using, or enjoying the same, paying taxes thereon, if any, and claiming the same adversely under such deed for five years before this suit, then find for said defendants Scanlan and Cage."

This charge is assigned as error, because there was no evidence showing the payment of taxes by Ingraham, and "because the deed from Palmer to Ingraham only conveyed lots 57 to 66 inclusive, while the charge instructs the jury that if they find the facts set forth, to find for both defendants Scanlan and Cage generally upon the whole case."

There was no testimony offered to show that Ingraham ever paid taxes on the lots conveyed to him by Palmer or any other part of the land. On this ground the assignment must be sustained. The deed from Palmer to Ingraham, as we have seen, conveys lots 51 to 66 inclusive, containing $2\frac{1}{2}$ acres each, which would only amount to 40 acres. This could not embrace the 58 acres claimed by Scanlan and the 21 acres claimed by Cage, even if the locality of the lots had been fixed by the testimony.

Appellees contend, however, that if there was error in the charge it was immaterial, because it was shown that Ingraham was in possession claiming the land for more than ten years, while the statute of limitation was in force, from the spring of 1845 up to the time he sold to Cage in 1859, and to Scanlan and Trube in 1862. In order to hold that the error in the charge upon the statute of five years was immaterial, we must be authorized to conclude from the evidence that the court should have instructed the jury to find for defendants Scanlan and Cage under their pleas of ten years limitation. This we can not do for several reasons. It would require the verdict of a jury to ascertain what land the possession of Ingraham applied to, and whether or not Scanlan's and Cage's deeds from Ingraham included only such land. His constructive possession could not be extended beyond the boundaries given in his deeds, if he had deeds during such possession, or beyond the boundaries of the deeds of other persons for whom he was holding in case he was so holding possession. Pearson v. Boyd, 62 Texas, 541.

Again, any claim he may have made to lots 19 to 66 inclusive, was duly conveyed to Worsham on April 3, 1849, by purchase under the mortgage to him of date March 23, 1844; and none of such claim re-

turned to him until in July 1853, and then only a part of the same was reinvested in him, lots 51 to 66 inclusive. During the time the title or such claims as he had was out of him to these lots, he owned lots 11 to 18 inclusive, derived by him from Frost through Redmon. The evidence is not entirely clear, to say the least of it, as to how much land his actual improvements covered or what land was improved, nor can we say how or for whom he claimed to hold while the title was in others. It is reasonably certain that part of the land recovered by Scanlan and Cage was not reduced to actual possession by Ingraham; and if this is so, his severance of such part by sale under the mortgage had the effect to sever it from his possession while it was outstanding, unless he was in possession of some portion of it in the right of the person to whom it was conveyed. Lots 56 to 66 were outstanding in Palmer from July 16, 1849, to July 12, 1853, when he conveyed them back to Ingraham. Other lots passed to Cone by Worsham's deed to him July 31, 1849, and all of them remained in Cone until he conveyed lots 51 to 56 inclusive back to Ingraham, in 1853. There was not ten years possession after this until the running of the statute was suspended. And again, the evidence is not conclusive that Ingraham was at any one time in possession of any of the land for ten consecutive years. A jury must elucidate this question under appropriate instructions. There was not paper title in Ingraham from Frost to a sufficient quantity of land to embrace the number of acres claimed by Scanlan and Cage; and besides this, if there had been such title as to quantity, there was a necessity for a verdict upon the question of locality. Did the deeds to Ingraham embrace the very land claimed by defendants? Could the land be found? Does the last set of deeds from Worsham and his vendees to Ingraham include it, granting that Ingraham's possession under the ten years statute was sufficient? Defendants claim specific surveys and recovered them. Such questions are for the jury. But there is another question, Could the plaintiff recover at all? It was agreed by the parties that S. M. Frost owned all of lot 11 by a valid chain of title from the sovereignty of the soil, under deed from Perry, executor of the will of Stephen F. Austin, deceased. After his death, commissioners duly appointed to partition his estate reported to the Probate Court, "that they were unable to make partition of lot No. 11, as they were unable to ascertain what part of said lot belonged to the Frost heirs; upon which the court ordered that the interest of said heirs and of the estate of S. M. Frost, deceased, be sold for the purpose of partition." This was accordingly done, and the deed of the commissioner appointed for the purpose conveys all the right, title, and interest of the heirs and devisees and of the estate of S. M. Frost to the survey, the interest estimated in the deed at 68 acres of land. It has already been shown that this interest became vested in Mrs.

Hitchler by regular conveyances. Defendants Scanlan and Cage contend that the deed of the commissioner made by order of the Probate Court described no land, and plaintiff can not recover any definite land out of lot No. 11, as she does not show how much and where the interest conveyed is. Lot No. 11 is identified and fixed on the ground by its boundaries. Frost was the owner of all of it, and the interest of his estate was such as he had at his death—that is, such of it as he had not sold or as he had not been divested of by some legal method. The title of the estate was perfect to all the survey except such as had so passed out of him. It was prima facie title, and would support an action in the hands of any one who owned it for all the land except such as could be shown to have been legally conveyed. Plaintiff alleged and proved that certain 15 acres had been conveyed by Frost out of the northeast corner of the tract; the residue was prima facie vested in her, except such part as was shown to have been legally divested. Of course the title could be defeated by full limitation, or other superior title, if shown. It was for the defense to show what part, if any, had been divested.

Because of the errors pointed out in the charge of the court, we conclude that the judgment of the lower court should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted March 1, 1892.

A motion for rehearing was refused.