William Carlyle & Co. v. J. W. Pruett et al.

Decided December 5, 1904.

**1.—Title to Land—Limitation.**

Facts held not to show title under the three and five years statutes of limitation, where the claimant had no title or color of title from the sovereignty of the soil and held under an intermediate grantor who claimed by virtue of a sale under a purported power of attorney executed eight years after the death of the person alleged to have given it.

**2.—Limitation—Holding by Tenant.**

A written obligation by one claiming a certain tract of land, stipulating that in consideration of a holding for him by a tenant for five years the tenant should become the owner of twenty-five acres thereof actually occupied by him, and binding himself to give a deed to the same, passed title to such portion to the tenant on completion of such five years' occupancy, although no deed was ever executed or demand therefor made, and the further possession of the tenant was for himself and could not inure to the benefit of the alleged owner so as to give him title to the entire tract under the ten years statute of limitation as against one claiming by direct chain of title from the sovereignty of the soil.

**3.—Landlord and Tenant—Possession—Actual and Constructive.**

Although the tenant considered himself, so long as he remained on the land, the tenant of the owner as to all the tract except the twenty-five acres, he had no actual possession of any of the land of his landlord after the expiration of the five years, and therefore, could have no constructive possession.

Appeal from the District Court of Polk. Tried below before Hon. L. B. Hightower.

*Thomas B. Greenwood* and *James E. Hill, Jr.,* for appellant.—Constructive possession is dependent on actual possession, and from the time Jesse G. Gilbert begun to hold all the enclosed or improved land in his own right, as vendee under written contracts, those under whom appellees claim had no actual possession, by tenant or otherwise, and hence could have no constructive possession, and yet, this period of time, during which the proof shows absolutely no actual or constructive possession of any part of the land, available to appellees, must be included to make out the ten years, required by the statute. Vardeman v. Lawson, 17 Texas, 15-17; Neyland v. Ward, 54 S. W. Rep., 604, 605, 93 Texas, 736; Hemming v. Zimmerschitte, 4 Texas, 165; Catlin v. Bennatt, 47 Texas, 165; Cunningham v. Frandtzen, 26 Texas, 38, 39.

*J. C. Feagin* and *Hutcheson, Campbell & Hutcheson,* for appellees.—
1. Where a party goes into possession as a tenant for his landlord that relation continues until expressly dissolved and terminated by mutual consent of the parties. Mattfeld v. Huntington, 43 S. W., Rep., 54.

The tenant can not, by repudiating the landlord's title, dissolve the relationship of landlord and tenant, but must surrender possession to

accomplish this. Bruce v. Richardson, 64 S. W. Rep., 785; Juneman v. Franklin, 3 S. W. Rep., 562, 67 Texas, 411; Mattfeld v. Huntington, 43 S. W., 53, 55 S. W. Rep., 361.

The actual possession of any portion of a tract of land by a tenant is in law the possession of the whole tract; size of enclosure immaterial. Puryear v. Finiery, 40 S. W. Rep., 450; Boles v. Brice, 66 Texas, 724.

If Gilbert's possession of any portion of the Garcia tract was not for and in subordination of Fisher's title, it was in the assertion of his own right as one of the joint owners of the whole tract, and the assertion of title and possession of the land in himself inured to the benefit of his coowner, Fisher, and his possession inures to Fisher's benefit, and is notice of his title. Ramirez v. Smith, 59 S. W. Rep., 260; Watkins v. Edwards, 23 Texas, 443; Hawley v. Bullock, 29 Texas, 224; Mullen v. Wimberly, 50 Texas, 465; Mainwaring v. Templeman, 21 Texas, 205; La Rou v. Gaunt, 62 Texas, 482.

The possession of one cotenant is the possession of all he holds in trust for balance. Phillips v. Flynn, 83 Texas, 583.

PLEASANTS, ASSOCIATE JUSTICE.—This is an action of trespass to try title to a tract of 738 acres of land, a part of the M. Garcia one-third league in Polk County. The suit was brought by William Carlyle and George W. Pennell, composing the firm of William Carlyle & Co., against J. W. Pruett, R. E. Pruett, Archibald McDonald and W. D. Cleveland. The defendants Pruett disclaimed title. McDonald disclaimed title to 25 acres of the land described in his answer as "a certain 25-acre tract formerly owned by Jesse G. Gilbert." As to the remainder of the 738 acres he pleaded not guilty and limitation of three, five and ten years, and by plea in reconvention set up title to the land by limitation and prayed for judgment therefor against plaintiff. The defendant Cleveland, who was the vendor of McDonald, adopted the answer of the latter.

By supplemental petition plaintiffs pleaded not guilty in answer to the plea in reconvention and by special plea in avoidance of the defendants' claim of title by limitation of three and five years averred that the deed under which defendants claimed was executed under a forged power of attorney.

The trial in the court below was without a jury and resulted in a judgment in favor of McDonald for all the land except the 25 acres to which he had disclaimed title.

The evidence shows and the trial court found that appellants have a regular chain of title to the land from the sovereignty of the soil.

The chain of title under which appellee McDonald claimed is as follows:

"1. A conveyance from M. Menard to John Clements of Jefferson County, Texas, to 738 acres of the M. Garcia survey, of date June 20, 1863.

"2. A purported power of attorney from John Clements to M. D. Ford, of date January 22, 1887.

"3. A conveyance from John Clements by M. D. Ford, as attorney

in fact, to Sarah J. Ford, of the north half of the M. Garcia one-third league. This conveyance recites a consideration of $250 cash and valuable services rendered and expenses incurred in behalf of Clements.

"4. A conveyance by M. D. Ford and Sarah J. Ford, his wife, to C. N. Fisher, to the north half of the M. Garcia survey, dated July 25, 1887, and recorded in Polk County on October 18, 1887.

"5. A conveyance from C. N. Fisher and wife to appellee W. D. Cleveland, of date November 29, 1899, of the north half of the Garcia survey 'save and except 25 acres sold to Jesse Gilbert.'

"6. A conveyance from appellee W. D. Cleveland to appellee Archibald McDonald, of date December 31, 1900, of the 738 acres of land sued for, 'save and except 25 acres belonging to Jesse Gilbert, together with all improvements thereon.'"

It was shown by uncontradicted evidence that no taxes were paid on the land adjudged to appellee McDonald during the period of any actual possession.

There was no evidence of any title or color of title in Menard from or under the original grantee. It was shown by uncontradicted evidence that John Clements died at least eight years prior to the date of the purported power of attorney from him to M. D. Ford.

Under these facts McDonald acquired no title under the three or five years statute of limitation. The evidence upon the issue of limitation of ten years upon which the trial judge adjudged the title to the land to be in McDonald is as follows:

In the spring or summer of 1887 one Jesse G. Gilbert went upon the 738 acres of land sued for and built a house and made a small clearing. This was under an agreement with M. D. Ford whereby Ford was to convey Gilbert 25 acres in consideration of Gilbert's protecting Ford's interest for a period of five years. A few days prior to July 25, 1887, the date of the deed from Ford and wife to C. N. Fisher, the latter went upon the land, and after inspecting it and agreeing to purchase it made a similar agreement with Gilbert, which was in writing and as follows:

"Whereas, I have received from M. D. Ford and Sarah J. Ford a general warranty deed to the north half of the Macino Garcia one-third league grant in Polk County, and whereas it was well understood and agreed before and at execution of said deed that said Ford had obligated himself to one Jesse Gilbert, who now lives on the land, that he would make to said Gilbert a bond for title to 25 acres, surrounding and including his house and improvements.

"Now be it known that I hereby obligate myself to make to said Gilbert on demand my bond for title to said 25, . . . conditioned as agreed to make him a deed to the same after three years, he protecting the timber for me on said tract in the meantime from trespass and waste by others. July 25, 1887. Chas. N. Fisher."

Afterwards on December 17, 1890, Jesse G. Gilbert executed the following acknowledgment of tenancy to C. N. Fisher, to wit:

"State of Texas, Polk County. Be it known that whereas heretofore on the 27th day of May, 1887, the undersigned, a citizen of said county, by written contract and acknowledgment with them, rented and

leased from S. J. Ford and William L. Ford, both of the same county, the following real estate situated in Polk County aforesaid, the same being the P. M. Maxwell 640-acre grant and part of the M. Garcia one-third league survey and adjoining the Maxwell survey, which land rented and leased by me as aforesaid is bounded and lies as follows (here are inserted the field notes), embracing and containing within aforesaid boundaries 1396 acres, leased by me as aforesaid of said parties, and on which I then resided and occupied and held possession of, for said parties, leasing the same from them, for the space and term of five years, the said parties obligating themselves there and then to make and deliver to me or my heirs at. the expiration thereof a good and sufficient deed to twenty-five acres thereof in a square shape so as to include my improvements on same. And whereas the parties have sold and delivered said land to Chas. N. Fisher, he being subrogated thereby to all their rights, privileges and prerogatives, connected or attached thereto, as well as their aforesaid obligation.

"Now be it known that I, the aforesaid Jesse G. Gilbert, do hereby and herein acknowledge myself a tenant on said land, for him and his said vendees and as his and their property from the time of said sale and conveyance by said parties, of same to him, it being· understood at the time of said sale that said lease of five years continue as from said Fisher. And I hereby acknowledge his title to said land and do faithfully promise and agree to peaceably surrender same to him on expiration of said lease and in the meantime to protect same for said Fisher from waste or trespass. It being understood that said Fisher, his heirs or legal representatives shall· make and deliver to the undersigned a good and sufficient title to 25 acres thereof as was agreed in the original lease, which he confirmed, ratified and adopted at the time he purchased said land. Witness my hand this 17th Dec., 1890. J. G. Gilbert."

On January 2, 1891, Chas. N. Fisher executed to Jesse G. Gilbert the following written obligation:

"State of Texas, Polk County. Be it known that I, Chas. N. Fisher, of Liberty County, Texas, in consideration of the sum of one dollar to me in hand paid by J. G. Gilbert of Polk County, Texas, the receipt of which is hereby acknowledged as well as in consideration of promise, agreement and undertaking on the part of said J. G. Gilbert to hold for said Fisher as his tenant and as his property, and to protect from trespass and waste the north half of the Macimo Garcia one-third league survey and also the P. M. Maxwell 640-acre tract or grant, both situated in said Polk County, which said land said Gilbert by written contract has leased until the expiration of five years from the 27th of May, 1887, since which date said Gilbert has been tenant of the owner of said land, viz., said Fisher and his immediate vendor.

"Now in consideration of the premises said Fisher hereby obligates himself to make to said Gilbert, his heirs, or assigns, a warranty title to 25 acres off of said north half of said M. Garcia grant, to be run, located and surveyed so that it lies in a square of 25 acres, to include in its boundaries the house and improvements put up and made thereon by said Gilbert and now occupied by him as homestead, obligating him-

self herein to make said title at the expiration of term of said lease, and when same may be demanded of him by said Gilbert, his heirs or assigns, without further conditions or expense.

"In testimony of which witness my hand and signature on this the 2d day of January, 1891.    Chas. N. Fisher."

Several witnesses testified for the defendant to the effect that they were well acquainted with Gilbert and lived near him during the time that he was on the Garcia land, and that he always claimed to be holding the land for Fisher.  He left the place about October, 1898.  No demand or request was made by him for a deed until after he left the land, and no deed was ever made to him.

The undisputed evidence shows that he never had more than five acres of the land inclosed and that all of his improvements were upon the five acres.  For many years before he left the land he claimed to own 25 acres including the five acres upon which his improvements were situated.  He rendered this 25 acres for taxes in his own name and paid the taxes thereon continuously from 1890 to 1899.

In 1893 Fisher executed a deed of trust on the 738 acres, less 25 acres previously sold to Jesse Gilbert.  In another deed of trust executed by Fisher in 1888 upon the 738 acres the Gilbert 25 acres is expressly reserved.

C. N. Fisher testified: "Before I bought the land I went with Ford to look at it, and I rode around it; I found Jesse Gilbert there, and his improvements looked like he had just put them on the land; he had a house, but it had no chimney; looked like it had been there just about a month; after I had gone around the land and looked at it and agreed to take it, Gilbert then agreed to hold the land for me as my tenant, as he was doing for Ford.  Gilbert made arrangements then and there that he would occupy the land and look after it for me, and he did so about October, 1898; he never notified me that he was [not] holding the land for me at any time, but on the contrary he wrote me letters occasionally, some as late as 1898, and the nature of the letters was that he was still there, and he hoped that when I made a deed it would include his improvements.  It was my understanding that Gilbert was occupying the land for me from the 25th day of July, 1887, until the 19th of November, 1899, as my tenant. . . .  All the time he was there he was my tenant under that contract.  Mr. Garvey surveyed the 25 acres for Gilbert in 1898.  I never changed my relation with Gilbert from the time he went on the land until he left the land in 1899 at all, and I am positive I made no deed to him in 1899, or any other time.  Up to the time I sold this land to Cleveland I have had no notice from Gilbert or anyone else [that his holding was] other than as my tenant."

Just before Gilbert left the place he had the 25 acres claimed by him, which included the five acres upon which his improvements were situated, surveyed and gave the field notes and his contract under Fisher to Mr. J. Holshoussen.  The latter testifies that these papers were given him by Gilbert to enable him to get a deed from Fisher for the land.  As before stated no deed to Gilbert was ever made by Fisher or his vendees.

We think this evidence fails to sustain appellees' contention that Fisher acquired title to the land under the ten years statute of limitations. The written contract under which Gilbert took possession of the land as Fisher's tenant expressly provides that after he shall have remained on the land for five years he shall become entitled to a deed to 25 acres including his improvements. After remaining upon the land for five years in compliance with this contract Gilbert became the owner of 25 acres, including the five acres which he had inclosed and upon which he had placed all of his improvements. Being the owner of the 25 acres he could not be holding it as Fisher's tenant. He was the lessee of the whole 738-acre tract, and it is doubtless true that as long as he remained upon the land he regarded himself as Fisher's tenant as to all of the tract except the 25 acres, but he had no actual possession of any of the land owned by Fisher after the expiration of the five years, and therefore could have no constructive possession.

It is well settled that if Fisher had executed a deed to Gilbert at the expiration of the five years for the 25 acres including the improvements, or for the five acres which Gilbert had inclosed, that thereafter the possession of Gilbert would not be Fisher's possession nor inure to his benefit. Cunningham v. Frandtzen, 26 Texas, 38; Neill v. Cody, 26 Texas, 291; Mosely v. Withie, 26 Texas, 720; Acklin v. Paschal, 48 Texas, 177; Hitchler v. Scanlan, 83 Texas, 569.

We think the principle announced in the cases cited must control in the present case. The contract under which Gilbert claimed the 25 acres after it had been executed on his part gave him a right or title to all the land in his actual possession superior to that of Fisher. It was not a legal title, but it was such a title as would sustain an action of trespass to try title or defeat such an action brought against him by Fisher. Such being the character of his claim, the withholding of the deed by Fisher or the failure of Gilbert to demand a deed would not convert his ownership of the land into a tenancy under Fisher. The relation of landlord and tenant between the parties terminated as soon as Gilbert's occupancy of the land under his contract ripened into ownership. The fact that the description of the 25 acre tract contained in the contract does not definitely fix its boundaries becomes immaterial in view of the undisputed evidence showing that Gilbert's improvements and inclosure did not cover more than five acres. The contract and Gilbert's occupancy thereunder expressly gives him title to this five acres, and his actual possession of the 738 acres being confined to the five acres, when Fisher's title therein passed to Gilbert his constructive possession of the tract ceased.

We are of opinion that the judgment of the court below should be reversed and judgment here rendered in favor of appellants for the land in controversy, and it is so ordered.

*Reversed and rendered.*