## No. 2367.

## G. A. ARCHIBALD ET AL. v. A. C. JACOBS AND WIFE.

1. HOMESTEAD.—An insolvent debtor who has assigned for the benefit of creditors, who at the time of such assignment has a homestead in which his family resides, can not afterwards claim homestead rights in another piece of property which he had begun to improve with a view of making it a home, but did not occupy as such, at the time of the assignment.

2. ABANDONMENT.—Abandonment of a homestead occupied as such, can not be accomplished by mere intention; there must be a discontinuance of the use, coupled with an intention not again to use as a home, to constitute abandonment, and without the abandonment of an existing homestead no right can exist to fix that character to another property, unless it be by way of addition to the existing homestead.

3. CASE DISTINGUISHED.—This case distinguished from Franklin v. Coffee, 18 Texas, 417; Barns v. White, 5 Texas, 628; Swope v. Stanzenberger, 59 Texas, 390; and Gerdner v. Douglass, 64 Texas, 79.

4. HOMESTEAD.—The doctrine above announced with reference to a residence homestead, applies also to the business homestead.

5. CHARGE OF COURT—HOMESTEAD.—See opinion for a charge of the court regarding homestead rights, held erroneous.

APPEAL from Wichita. Tried below before L. A. Crain, Special Judge.

*Hazelwood & Templeton* and *R. D. Welborne,* for appellants:. On the proposition that the acts and declarations of the grantor,

A. C. Jacobs, made after the execution of the deed of assignment, are admissible to defeat or in any way affect the title of the grantee to the property therein conveyed, cited Grooms v. Rust, 27 Texas, 231; Thompson v. Herring, 27 Texas, 282; Carleton v. Baldwin, 27 Texas, 573; Garrahy v. Green, 32 Texas, 202; Hinson v. Walker & Co., 65 Texas, 103, and authorities cited.

That so long as appellee A. C. Jacobs owned and was actually using and occupying as his place of business, the store house and lot in the north part of the town of Henrietta, the same constituted his business homestead, and as such was exempt from forced sale, and the execution by him (Jacobs) of a deed of trust thereon, while he was so owning, using and occupying it, could not operate as an abandonment of his homestead rights thereto, and said deed of trust, or any sale made thereunder, of said place of business, was absolutely void, and could not affect in any way appellant's title to the property in controversy, they cited Medlenka v. Downing, 59 Texas, 32; Ruhl v. Kauffman & Runge, 65 Texas, 723, and authorities there cited; Jones et al. v. Goff, 63 Texas, 248; Inge & Boring v. Cain, 65 Texas, 75.

*Barrett & Stine,* for appellee, insisted that if improvements placed upon a business lot in a town or city, with a view to make it the place of business of the head of the family, in a town or city, of such a nature and extent as to manifest beyond doubt the intention to complete the improvements, and occupy it as a place of business, makes it exempt from forced sale under the laws of the State of Texas, cited 44 Texas, 614; 38 Texas, 410; 48 Texas, 28; 29 Texas, 129; 50 Texas, 269; 62 Texas, 511; Constitution, section 50; 53 Texas, 628; Franklin v. Coffee, 18 Texas, 20; Campbell v. McManus, 32 Texas, 442; 64 Texas, 76; 19 Texas, 373; 20 Texas, 12; 16 Texas, 57; 50 Texas, 576, 578; Thompson on Homestead, section 146; United States Digest, old series, 7, 83, 3; 57 Texas, 614.

STAYTON, ASSOCIATE JUSTICE. This action was brought by A. C. Jacobs and his wife to recover a house and lot in the town of Henrietta. The property once belonged to Jacobs, but on July 4, 1884, he made an assignment of all his property, other than such as was exempt from forced sale, for the benefit of such of his creditors as would consent to take under it, and release him. The assignment was made under the statute. Archibald was made the assignee, qualified and took charge of the estate, and sold

the property in controversy to the defendant Welborne. Jacobs was a merchant, doing business, at the time of the assignment, in a house in the town of Henrietta, which he then owned, and had used for the purposes of his business for more than a year. He was also doing business in another house in the same town, which he rented, but neither of these houses were in any way connected with the property in controversy; in fact, the one which he used, and in which he seems to have done a large business, was in another part of the town. He was also carrying on a mercantile business in another town on rented premises, and owned and occupied one or more residences in the town of Henrietta, distant from, and in no way connected with, the property in controversy.

At the time of the assignment he had commenced building a house on the lot in controversy, but no part of it was in condition to use, or had been used by him for any business or residence purpose. The lot was not paid for, and was encumbered with a vendor's lien for about five hundred dollars. After the assignment the assignee, out of the trust funds in his hands, discharged this lien and also an attachment lien for about nine hundred dollars. He also completed the unfinished house on the lot, and in this expended over one thousand eight hundred dollars of the trust funds. All these expenditures seem to have been made at the request of Jacobs, with the consent, perhaps, of some of his principal creditors. After the house was finished the assignee placed the several assigned stocks of goods in it and used it in disposing of them, Jacobs serving him as an employe on a monthly salary.

Jacobs now asserts that he intended the property for a business home and residence when he commenced to improve it, and claims that it thus became covered by the homestead exemption and did not pass to the assignee by the assignment. This action has for its foundation this claim, and none other.

The court below permitted evidence to be introduced, tending to show that Jacobs may have intended at some time to use the upper story of the building as a residence and the lower story as a business house, and this evidence consisted of acts and declarations of Jacobs and wife since, as well as before, the assignment was made, and on the other side much evidence was introduced to show that he never intended to make any part of it his residence, and that the claim now asserted was an afterthought. There are twenty-one assignments of error presented

in the brief of counsel, relating to the admission and rejection of evidence, the giving and refusing of charges, and the action of the court in refusing to grant a new trial, but their consideration in detail is not necessary.

If everything the plaintiffs evidence tended to prove be conceded to have been established, how stands the case?  We have an insolvent debtor owning and actually using a residence and business house in no way connected with the property in controversy, but he had commenced to improve this property, and intended at some future time to use it as a residence and place of business.  This is the full force of the appellee's case.  There can be no doubt that the property on which they resided at the time the assignment was made was the residence homestead protected from forced sale, and they could not divest it of that character by an intention to abandon it at some future time, even though that intention was evidenced by the fact that they had commenced to improve the property in controversy with intent to use a part of it as a residence when it might be completed.

Abandonment of property actually homestead, can not be accomplished by mere intention; there must be a discontinuance of the use coupled with an intention not again to use as a home to constitute abandonment; and without an abandonment of an existing homestead no right can exist to fix that cheracter to another property, unless it be by way of addition to the existing homestead.

The residence homestead existing at the time the assignment was made consisted of the lot or lots resided upon or used for home purposes, and there can be no pretense of any purpose on the part of the appellees to devote the property in controversy to a residence use other than one which would have made it the home of the family instead of the property which was actually the home.  There could not be two places of residence for the family, separate and in no manner used together, and it must be held that the home in fact existing at the time the assignment was made was the only property which the appellees could claim as the residence homestead.

Where no homestead dedicated by actual occupancy exists, effect must be given to ownership, intention and preparation to use for a home, or otherwise one indebted might never be able to secure a home for a dependent family.  This was recognized in Franklin v. Coffee, 18 Texas, 417, and in other cases; Barnes

v. White, 53 Texas, 628; Swope v. Stantzenberger, 59 Texas, 390; Gardner v. Douglass, 64 Texas, 79; but no case was given to the extent of holding when there was a home in fact that this might be abandoned while actually used as the home of the family, and another homestead acquired by intention at some time in the future to use it as a home accompanied with preparation to so improve it as to make it suitable for such a use.

What has been said as to the residence homestead is equally true of the business homestead. The property owned and used by A. C. Jacobs as his place of business was the only property he could claim to be exempt from forced sale, on account of such use at the time the assignment was made. That property may have been old and insecure, but it was the only place of business upon which the acts of its owner had fixed a homestead character. As he made it, so must the law regard it. Conceding every fact to have been proved as the evidence for the appellees tends to prove, still it must be held that the property in controversy was not the homestead, nor a part of the homestead of appellees at the time A. C. Jacobs made the assignment through which the appellant Welborne claims. The acts and declarations of the appellees and of the assignee, made after the assignment. should have been excluded, as should have been the trust deed in favor of Willis & Brother, for none of these matters could have any bearing on the question of homestead.

The court, among other charges, gave the following: "To constitute a use of property for homestead purposes, or as a substitute for homestead purposes, the person claiming the same must not only intend to dedicate the same for homestead purposes, but must actually occupy it for such purposes, or must take such steps toward preparing the same for use and occupancy as a homestead as reasonably to give notice of his intention to use and occupy the property, either as a home or a place to exercise his calling or business."

"That in case of the destruction of the old place of business or home, or in case the same, by reason of decay or from any other cause, becomes unfitted for the uses of the business or calling of the owner, he being the head of a family, and such person, with the intent in good faith to abandon such place of business or home, purchases another lot or lots, with the intent to build thereon suitable buildings and use the same for homestead purposes, and immediately commences to erect thereon such buildings or improvements as may be necessary and proper for

a home or a place in which to exercise his calling or business, and continues such improvements with such diligence as reasonably to give notice that he intends to use the same when completed, such place of business or home would be exempt from forced sale, as a homestead, to the same extent as if the same was actually used and occupied as a home or place of business."

"If you believe from the evidence that the plaintiffs were the owners of the business house in the north part of town, in which A. C. Jacobs was doing business as a merchant at the time of the assignment, but that said place of business was unsuitable for the purpose by reason of its locality, and the fact that it was decaying and unsafe, and you further believe that they had, prior thereto, fully determined to abandon said house and adopt another place as his place of business, and that the plaintiff, A. C. Jacobs, had, in furtherance of that intent and determination, purchased the lot in controversy, and had commenced the erection of a business house thereon, and was at that time proceeding with the work of erecting said building with the intent on the part of the said plaintiff, in good faith, to abandon the old place of business and to adopt the new, and such work was then being done in such manner as reasonably to give notice of his intention to so use it, then, and in that case, the title to the lot in controversy did not pass to the assignee by the deed of assignment, and you will find for the plaintiff the premises in controversy." It is urged that these paragraphs of the charge were erroneous; and of this, in view of the facts of the case, we think there can be no doubt.

What has already been said indicates the objections to these paragraphs of the charge. Striking out the words, "or as a substitute for homestead purposes," the paragraph first quoted would be correct in a case where no residence or business place was already in use. The second paragraph, as well as the third, authorized the jury to find, notwithstanding the appellees were actually using property owned by them as a residence and place of business, that the property in controversy was homestead, if the appellees intended so to use it, because it was better adapted to business purposes and more secure than that in use. This was erroneous.

If a business house or a residence should be destroyed, the family to whom it belonged as a homestead would doubtless have the right to improve other property to be used for these purposes, and the rule applicable to the original dedication of

homestead on unimproved property might be applicable in such a case; but this is not such a case. The residence and business house of the appellees were never destroyed; on the contrary, they were in actual existence and use as a home and place of business at the time the assignment was made, and so at the time this cause was tried. The business house may have been deemed unsuitable or unsafe, still it was the house by use dedicated as the place of business.

The place of business of the head of a family is exempted from forced sale and will not pass under an assignment, because at the very instant the assignment takes effect, facts exist which give the exemption; but it may be doubted if a property intended to be used at some future time as a place of business, but never in fact so used before an assignment, would be exempted from the operation of an assignment by the fact that the head of the family had commenced to improve it with intention to make it his place of business, no other place of business existing at the time of the assignment. Be this as it may, when a place of business in fact exist, mere intention coupled with preparation to use another, the unsuitableness of that in use, or its insecurity can not make the exemption extend to a property never used as a place of business.

The appellants asked the following instruction:

"That the plaintiffs could not hold as exempted property more than one business homestead at the same time, and that if the jury should find from the evidence that the plaintiffs, at the time of the execution of the deed of assignment, actually owned and were using and occupying as his place of business a house and lot other than, and disconnected with the one in controversy, and that the property in controversy had never been used as a place of business, that said last named property passed by the assignment to defendant Archibald, and the jury should find for defendants." The court refused to give it. This charge correctly stated the law applicable to the facts of this case, and it should have been given.

For the errors noticed, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered December 13, 1887.