· WILL POWERS v. I. N. PALMER ET AL.

Decided May 26, 1904.

**1.—Homestead—Abandonment—Intention.**

One whose title is sufficient to support homestead rights, and being in actual possession, does not lose his homestead rights in the property by declaring his intention of abandoning it or by acquiring other property with the intention of making it his homestead; nor will an agreement to remain on and hold the property for another divest him of such rights.

**2.—Homestead Rights—Abandonment—Judgment Creditor.**

Although plaintiffs intended to move onto the premises in controversy and expressed such intention and had made arrangements to build a house thereon, still so long as they had homestead rights in other property which could be enforced, they could acquire no rights in the premises in controversy and an abstract of judgment against them filed while they had homestead rights in other property gave such judgment creditor a lien enforcible by sale after they had removed to such new home.

Appeal from the District Court of Harris. Tried below before Hon. Norman G. Kittrell.

*E. P. & Otis K. Hamblen,* for appellant.

*A. C. Van Velzer,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This is an action of trespass to try title brought by the appellant against the appellees to recover certain premises situated in the city of Houston and duly described in the petition.

The defendants answered by general denial and plea of not guilty, and specially pleaded that plaintiff claimed the premises in controversy through and under an execution levy and sale and a sheriff's deed executed on June 2, 1903, and that at the time of said levy and sale the property in question was appellees' homestead, and said pretended sale was therefore void. The answer concludes with a prayer for judgment canceling said sheriff's deed and quieting defendants in the title and possession of said premises.

In reply to this plea plaintiff filed a supplemental petition in which he alleges in substance that on April 22, 1902, he recovered a judgment against the defendant I. N. Palmer in the District Court of Harris County for the sum of $692.66; that said judgment was properly recorded in the judgment lien records of Harris County on May 5, 1902; that an execution was duly issued on said judgment and levied upon the premises in controversy on March 11, 1903, and said premises were regularly sold under said levy on June 2, 1903, and purchased by plaintiff. It is further alleged that at the time said judgment was recorded no part of the premises in controversy was the homestead of the defendants, but that they at that time owned and occupied as their home- steads other premises situated in the city of Houston, and described as lots numbers 1, 2 and 3, in block 19 in Brunner addition.

The trial in the court below was to the court and resulted in a judgment in favor of the defendants.

The facts are undisputed, and succinctly stated are as follows: Some eight or nine years prior to the institution of this suit the appellees, who were then and are now husband wife, purchased from one Darling lots 1, 2 and 3, in block 19 in Brunner addition to the city of Houston. They immediately took possession of said premises and continued to occupy same as their home until the spring of 1903, when they moved upon the premises in controversy.

When they purchased said property they executed notes to Darling for $900 of the purchase money and assumed an existing indebtedness upon two of said lots upon which the improvements were situate in favor of the Michigan Loan Company. This indebtedness was payable in monthly installments and was secured by a mortgage or mechanic's lien upon said two lots. At the time they assumed the indebtedness of the loan company appellees understood that it amounted to $700. After paying the maturing installments for several years to the amount of $770, they ascertained on September 26, 1899, that the amount still due on the original indebtedness for which the property was bound was $1139. When they made this discovery they determined to make no further payments and to abandon the property. In the meantime the loan company had failed and its affairs were in the hands of a receiver appointed by the Federal Court for the Northern District of Texas. Appellee I. N. Palmer informed the agent of the loan company at Houston that he intended to give up the place, and said agent authorized him to hold the property for the loan company until its lien could be foreclosed. Appellees continued to live upon said property until April, 1903. The vendor's lien notes executed by the appellees in favor of Darling came into the possession of appellant and he brought suit thereon against appellee in the District Court of Harris County and secured a judgment on April 25, 1902, for $692.56, with foreclosure of the vendor's lien upon said premises. On May 5, 1902, an abstract of this judgment was duly recorded in Harris County. An order of sale issued on said judgment and said property was sold thereunder in July, 1902, and bought in by appellant. A short time thereafter said two lots upon which the loan company held a lien were again sold under the order of the Federal Court to satisfy said lien and were bought in by the receiver for said company.

The property in controversy was purchased by appellees on January 9, 1902, with the intention of making it their homestead. Their intention to abandon the property on which they were living and to make their home upon the property in controversy was a matter of general knowledge among their friends and acquaintances. At the time they determined to give up the place on which they were living the indebtedness due on said place exceeded its value several hundred dollars. Soon after purchasing the property in controversy appellees cleaned the brush and undergrowth therefrom, marked out the lines preparatory to

having it fenced, and set out some shrubbery thereon. They also procured a portion of the material with which to fence the lots and spoke to a contractor in regard to building said fence. They began the erection of a house on the property in March, 1903, moved into said house on April 6, 1903, and were living therein at the time of the levy and sale under which appellant claims.

Appellant procured the issuance of an alias execution on his judgment against appellees and the property in controversy was levied upon and sold thereunder by the sheriff on June 2, 1903. Appellant purchased at this sale for the sum of $11.

The only question presented upon this appeal is whether the property in controversy was the homestead of appellees at the time appellant's abstract of judgment was recorded.

Appellees by their pleading in the court below set up no facts sufficient to avoid the sheriff's deed under which appellant claims, other than that the property thereby conveyed was their homestead at the time appellant's judgment lien was created.

The uncontradicted evidence shows that appellees had their home upon the lots in block 19 in Brunner's addition at the time appellant's abstract of judgment was recorded. This property had been purchased by them for a homestead and they had continuously occupied it as such for eight or nine years. The fact that it was not paid for in no way affected their homestead rights except as against their vendor or the holder of the lien created prior to the time the property became their homestead. It is well settled that the title of appelles to said property was sufficient to support a homestead right therein. Lee v. Wellborne, 71 Texas, 502; Gibbons v. Hall, 59 S. W. Rep., 814.

It is equally as well settled that having title to said property sufficient to support a homestead right and being in actual possession and occupancy of same appellees would not lose their homestead right in the property by declaring their intention of abandoning it, or by acquiring other property with the intention of making it their homestead. In the case of Archibald v. Jacobs, 69 Texas, 248, Judge Stayton speaking for the Supreme Court says: "Abandonment of property actually homestead can not be accomplished by mere intention; there must be a discontinuance of the use coupled with an intention not again to use as a home to constitute abandonment."

The soundness of this rule can not be questioned and its enforcement is essential to the preservation of the homestead. If proof of a declared intention to abandon a homestead actually used and occupied as such should be allowed to defeat the homestead right in the property so occupied, such right would lose much of the security and protection with which it has always been the policy of our law to safeguard and surround it.

The agreement made by appellee I. N. Palmer with the agent of the loan company to the effect that he would hold the property for said company did not divest appellees of their title to the property and would

not have prevented them from asserting their homestead rights therein at any time. Nor do we think the fact that the indebtedness due upon the property largely exceeded its value can affect the question. This fact is but a circumstance going to show that appellees in good faith intended to abandon their homestead rights in the property, and under the evidence there can be no question that such was their intention. They failed, however, to divest themselves of either the title or possession of the property, and their mere intention to abandon it did not change its homestead character. If at any time prior to the sale under the foreclosure judgment the appellees had from any cause seen fit to change their intention of abandonment, it can not be doubted that they could have asserted and enforced their homestead rights in the property. So long as their homestead rights in this property were protected and secured to them by the law they could not acquire a homestead upon other property. Johnston v. Martin, 81 Texas, 18; Archibald v. Jacobs, 69 Texas, 248; Allen v. Whitaker, 27 S. W. Rep., 507; Sharp v. Johnson, 19 S. W. Rep., 259.

Their title to this property was not divested out of them until the sale under the judgment foreclosing the vendor's lien, which occurred some time subsequent to the record of appellant's abstract of judgment.

We think it must be held upon the facts disclosed by the record that appellees had no homestead right in the property in controversy at the time appellant's judgment lien attached thereto, and that the sale of the property under the execution issued upon said judgment passed the title.

It follows from this conclusion that the judgment of the court below should be reversed and judgment here rendered in favor of appellant for the property in controversy, and it is accordingly so ordered.

*Reversed and rendered.*

### ON MOTIONS TO CORRECT CONCLUSIONS OF FACT.

PLEASANTS, Associate Justice.—We erred in stating in the opinion filed herein on May 26th that the price paid by appellant for the lots in controversy was $11. Appellant testified that he was not present at the sale and was not certain what was the bid made for him for the property, but his impression was that it was $5 for one lot and $6 for the other two. From this testimony we concluded that the amount paid by appellant was $11. A further examination of the record shows that the sheriff's return on the execution under which the lots were sold was introduced in evidence and this return shows that the property was sold to appellant for $70, of which amount $16.74 was paid by appellant as cost of the sale and the balance of $53.26 was credited upon his judgment against appellees. This return was not impeached in any way and appellees did not attempt to contradict the statement therein made as to the price for which the lots were sold. We therefore find that the property was sold for the amount stated in the sheriff's return upon the execution.

Counsel for appellees insists that the evidence fails to show that appellees paid any part of the purchase money of the property purchased from Darling. The $770 paid by appellees to the loan company was paid upon a subscription to stock, and it does not affirmatively appear that the payment of this stock subscription was assumed by appellees when they purchased the property or that it was a charge upon the property. Aside from this $770 payment there is no evidence tending to show that appellees made any payment on the property.

Writ of error refused.