W. H. HENDERSON v. TEXAS MOLINE PLOW COMPANY ET AL.

No. 2705. Decided May 14, 1919.

1.—Homestead—Judgment Lien.

A homestead from which the owner had removed, immediately upon his forming an intention not to return to it became liable for his debts, and the lien of a judgment against him with abstract duly registered could then be foreclosed. (P. 470.)

2.—Homestead—Abandonment—Intent.

When the family removed from the homestead with the intent to return and re-occupy it, it did not lose its homestead character by abandonment, no other having been acquired, until the discontinuance of its use was coupled with an intention not to use it as a home. (Pp. 470-472.)

### 3.—Same—Exchange of Property—Passing Title.

On an agreement to exchange the homestead for other property, expressly stipulating that the title was to pass only through mutual deeds, the title passed only on the execution and exchange of such deeds. (Pp. 470, 471.)

### 4.—Homestead—Abandonment—Verdict—Charges.

Under an instruction that sale of the homestead was made when the essential elements of the deal were agreed on, the only thing undone being to pass title papers, a finding of the jury that the property was homestead at the time of the sale could only mean that it had not been abandoned at the time of such agreement to exchange, not that it was homestead when the deeds were passed, a date subsequent to that on which the verdict found that it had been abandoned. (Pp. 470, 471.)

### 5.—Same.

Under evidence that the owner of the homestead had removed from it with the intention of returning, and had acquired no new homestead, but had had later abandoned his intention of returning to the old one, and instructions that to constitute abandonment he must have acquired a new home, or have removed from the old with no intention of returning to it, the issue of abandonment by change of intention was not properly submitted to the jury, nor negatived by their finding that it had not been abandoned. (Pp. 471, 472.)

### 6.—Practice on Appeal—Remand or Rendition.

The appellate court disregarded a finding that the homestead had not been abandoned at the time of its sale, though rendered on erroneous instructions, and rendered judgment to the contrary upon undisputed testimony. Abandonment in this case, resting on a question of intent, should be determined by an affirmative finding by the jury, under proper instructions. (Pp. 471, 472.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Eastland County.

Henderson sued the Plow Co. and others to enjoin an execution sale and had judgment. On defendant's appeal this was reversed and rendered in their favor (168 S. W., 414) and Henderson obtained writ of error.

*Scott & Brelsford,* for plaintiffs in error.

Unquestionably Roberds had the right to enchange the Rising Star residence homstead for the Gryder farm, or to sell same for cash with the consent or acquiescence of his wife, and the judgment lien would not have attached. The fact that in the interim between the execution of the deed by the husband to the residence homestead, and the formal joinder of the wife in said deed and the delivery of the deed to the purchaser, the husband and wife had changed their intentions to the situs of the new homestead, and had taken preliminary steps toward the acquisition of a new homestead, would not amount to an abandonment of the original homestead, and would not subject the original homestead to a judgment lien. Black v. Epperson, 40 Texas, 162; Howard v. Mayher, 88 S. W., 409, 101 Texas, 642.

*D. M. Oldham,* for defendant in error.

The finding of fact by the jury is that the land in controversy was

abandoned as a homestead by T. B. Roberds prior to the time of the sale of the said land, and the record shows beyond controversy that the defendants held a properly abstracted judgment, at the time of the sale of said land, and in the county where the land is located, and therefore the judgment of the court should have been in favor of the defendants.   Glasscock v. Stringer, 33 S. W., 677; Bradley v. Janssen, 93 S. W., 506; Kopplemann v. Kopplemann, 94 Texas, 44, 57 S. W., 570; Steffian v. Bank, 69 Texas, 518, 6 S. W., 823; McLaughlin v. McManigle, 63 Texas, 553.

An oral agreement to convey real estate is not sufficient to pass title to the same.   Sayles' Statutes, art. 624, Statutes of 1911, art. 1103; Toyaho·Creek Irr. Co. v. Hutchins, 21 Texas Civ. App., 274, 52 S. W., 104; Weatherly v. Choate, 21 Texas, 274; Parsons v. Hunt, 98 Texas, 420, 84 S. W., 646.

The acquisition of a homestead, in Arizona, by Roberds, constituted an abandonment of his homestead, in Texas, if he has a homestead in Texas.   Tracy v. Harbin, 40 Texas Civ. App., 395, 89 S. W., 999; Milmo Nat. Bank v. Hirsch, 54 S. W., 781.

A conveyance of title to real estate, the homestead, can only be made by an instrument in writing, acknowledged and delivered.   Kopplemann v. Kopplemann, 94 Texas, 44, 57 S. W., 570; Steffin v. Bank, 69 Texas, 518, 5 S. W., 828; McLaughlin v. McManigle, 63 Texas, 553; Weatherly v. Choate, 21 Texas, 271; Sayles' Statutes, art. 624, Statutes of 1911, arts. 1103 and 1115.

A judgment duly abstracted and indexed against a judgment debtor, becomes a lien against all real estate situated in the county where abstracted, except exempt property.   And upon abandonment of exempt property by the debtor, the judgment lien attaches thereto, and the real estate is subject to the judgment lien.   R. S. of Texas, 1911, arts. 5616 and 5617; Bradley v. Janssen, 93 S. W., 506.

· Mr. Justice GREENWOOD delivered the opinion of the court.

On July 15, 1907, defendant in error, Texas Moline Plow Company, recovered a judgment in the District Court of Eastland County against T. B. Roberds and others for $3631.79, which is credited with payments of $503.60 on November 5, 1907, and of $200 on May 7, 1912. This judgment was duly abstracted in Eastland County on July 6, 1908.

Since prior to the date of the judgment until November, 1910, T. B. Roberds and family occupied as their residence homestead a certain improved lot in the town of Rising Star, in Eastland County.   Having been elected county tax assessor in November, 1910, T. B. Roberds then moved with his family to Eastland, and since that time there has been no actual occupancy of the Rising Star property, by any of the family of T. B. Roberds.

It is undisputed that until the November election, 1912, when T. B. Roberds was re-elected county tax assessor, it was his fixed intention

to again use the Rising Star property as the family home, at the expiration of his term of office.

On or about the date of the election in November, 1912, T. B. Roberds and W. D. Gryder agreed to an exchange of the Rising Star property, belonging to Roberds, for a farm in Eastland County, belonging to Gryder. With a view to accomplishing this exchange, T. B. Roberds, on November 12, 1912, signed and acknowledged a deed to the Rising Star property, from himself and wife to W. D. Gryder. The deed was not signed by Roberds' wife because she was then on a visit to Arizona, where she was joined soon after the date of the deed by T. B. Roberds.

About December 6, 1912, T. B. Roberds purchased for $1000 the improvements on 320 acres of government land in Arizona, and filed his application to purchase same under an Act of Congress, stating under oath that the application was made in good faith to obtain a home for himself.

On December 21, 1912, Roberds' wife signed and acknowledged the deed to Gryder to the Rising Star property. On January 3, 1913, the exchange between Gryder and Roberds was consummated by the delivery to Gryder of the deed to the Rising Star property and to Roberds of the deed to the Eastland County farm. The deeds were exchanged, by agreement of the parties, through Joe Burkett, who received the deed to Gryder about January 3, 1913, and who received the deed to Roberds some two or three weeks previously.

The evidence was undisputed that when the exchange was agreed on Roberds intended to make his home on the 160 acres he was to get from Gryder, upon the expiration of his term of office. There was abundant, through not conclusive, evidence that after November 15, 1912, and prior to January 3, 1913, T. B. Roberds had determined to make his home on the 320 acres in Arizona, and had formed the definite intention, with the concurrence of his wife, not to again use the Rising Star property as his home.

On April 26, 1913, an execution, issued on the judgment in favor of the Texas Moline Plow Company against T. B. Roberds and others, was levied on the Rising Star property, which had been conveyed by W. D. Gryder to plaintiff in error W. H. Henderson, who thereupon brought this suit to enjoin the sale of said property under said execution and levy, under averments that the property had continued to be the homestead of T. B. Roberds until the title passed from him to W. D. Gryder, and that since this fact did not appear of record, the execution sale would cast a cloud on the title acquired by plaintiff in error under Gryder.

Defendant in error, Texas Moline Plow Company, denied the averments on which plaintiff in error relied for the injunction, and plead an abandonment of the Rising Star property as the homestead of T. B. Roberds before he parted with the title to same, and prayed for judgment foreclosing the lien claimed to have been acquired on said property by the record of the abstract of the judgment.

The case was submitted on special issues, the jury finding. as follows: first, that the Rising Star property was the homestead of T. B. Roberds and wife at the time of its sale to W. D. Gryder, the jury being instructed that the sale was made when the essential elements of the deal were agreed on and the papers prepared, with the only thing undone being to pass the title papers; second, that the Rising Star property was abandoned as a homestead by T. B. Roberds on or about November 12, 1912, the jury being instructed that Roberds' temporary removal to the county seat, after his election, with the intention of returning to the Rising Star property on the expiration of his term of office, would not constitute an abandonment of this property as his homestead, but that it would constitute an abandonment of the homestead for Roberds to acquire a new homestead in the county seat, or for Roberds to remove to the county seat with no intention of returning to his former homestead at the expiration of his term of office; third, that T. B. Roberds formed the intention of acquiring a homestead in Arizona on or about December 6, 1912; fourth, that the deed of T. B. Roberds and wife to W. D. Gryder was delivered on or about January 3, 1913; and, fifth, that the statements in the application of T. B. Roberds to purchase the 320 acres of land in Arizona, on or about December 7, 1912, were true at the time they were made

On these findings the trial court gave judgment for plaintiff in error, enjoining the sale of the Rising Star property under the judgment of the Texas Moline Plow Company. This judgment is based on the jury's first finding, construed as meaning that Roberds had not abandoned the Rising Star homestead at the date on which it was conveyed to W. D. Gryder.

The Court of Civil Appeals reversed the trial court's judgment and rendered judgment for defendant in error, holding that, in the light of the court's charge, the findings of the jury showed an abandonment of the Rising Star homestead by T. B. Roberds prior to January 3, 1912, and that no sale of the homestead having been made prior to that date, the judgment lien attached, and should be enforced. 168 S. W., 414.

The law is perfectly plain that the residence of T. B. Roberds at Rising Star did not lose its homestead character until the discontinuance of its use was coupled with an intention not again to use it for the purposes of a home. Archibald v. Jacobs, 69 Texas, 251, 6 S. W., 177; Hudgins v. Thompson, 109 Texas, 433, 211 S. W., 586. T. B. Roberds could not, however, have the bona fide intention not to return to the Rising Star property, without immediately subjecting same to the payment of his debts, including the duly abstracted judgment of the Texas Moline Plow Company. Woolfolk v. Rickets, 41 Texas, 362; Tackaberry v. Bank, 85 Texas, 493, 22 S. W., 151, 299.

Under the undisputed facts, title to the Rising Star property did not pass from Roberds until the deed by Roberds and wife was delivered to Gryder. Croom v. Cotton Co., 15 Texas Civ. App., 328, 40 S.

W., 147. It was always stipulated that the title was to pass only through mutual deeds.

The case presented a single and simple issue, towit: was the property in controversy abandoned by Roberds as a homestead prior to his exchange of deeds with Gryder?

It would have been impossible for the jury to have understandingly found that the Rising Star property was abandoned as the homestead on or about November 12, 1912, and yet that it was the homestead when sold to Gryder on or about January 3, 1913. There is no difficulty in determining that the jury meant no more by finding that the Rising Star property was the homestead of Roberds when sold to Gryder than that it was such homestead on or about November 12, 1912, when the exchange deal was agreed on and the deed to Gryder was prepared. The court's definition of a sale forbids that we give any other meaning to the finding.

But, we can not agree with the Court of Civil Apepals that, having given this meaning to the jury's first finding, the others entitle the Texas Moline Plow Company to have judgment entered enforcing the asserted judgment lien. The entry of such judgment is to give conclusive effect to an appparent but not a real finding against plaintiff in error on the controlling issue in the case. Just as defendant in error, the Texas Moline Plow Company, is entitled to have us construe the jury's first finding in the light of the entire charge, so is plaintiff in error entitled to have us construe the other findings in the same light. And, when he look to the court's instructions on the law of homestead abandonment, we find it is impossible to adopt the jury's findings in response thereto as·a fair or just basis for subjecting the Rising Star property to the payment of defendant in error's judgment. For, the jury were explicitly told that to constitute an abandonment of Roberds' homestead at Rising Star, he must have acquired a new homestead in the town of Eastland or he must have moved to that town with no intention of returning to his Rising Star homestead when his official term expired, and the evidence was uncontradicted that Roberds did not acquire a new homestead at Eastland and that he removed there with the positive intention of returning to the Rising Star homestead at the expiration of his term of office. So, while the finding is apparently one against plaintiff in error upon the essential issue of abandonment of the Rising Star homestead by Roberds, such as the facts would have warranted entirely independent of his original intention in moving to Eastland or of his acquisition of a home there, yet it is really nothing more than a finding, utterly without support in any evidence, that Roberds had no intention, when he moved to Eastland, of returning to the Rising Star property, or that Roberds had acquired another home in Eastland. None of the other matters found by the jury can be said to constitute an abandonment in law of the Rising Star homestead. These matters tended to establish an abandonment but can not be held to necessarily establish the always essential

intention not to again use the Rising Star property for a home, with Roberds testifying explicitly that he did not have this intention.

The case may be summarized by the statement that there has been no submission of the real issue between the parties, with the law of homestead abandonment properly applied to the evidence, and no findings such as ought to be determinative of the rights of the parties.

It is therefore ordered that the judgment of the District Court in favor of plaintiff in error, and the judgment of the Court of Civil Appeals against plaintiff in error be both reversed, and that this cause be remanded for a new trial in the District Court.

*Reversed and remanded.*