**STATEN et al. v. HARRIS et al.    (No. 8769.)***

(Court of Civil Appeals of Texas. Dallas. Feb. 18, 1922. Rehearing Denied March 25, 1922.)

1. Homestead ⬅️164 — Conduct held not a change of homestead.

Plaintiff, living in a house designated as his homestead, bought another house and lot, and offered his residence for sale, and through a real estate agency signed a contract of sale. Plaintiff executed a deed of trust on the house which he bought, sold the house in which he lived, and moved into the house covered by the deed of trust. Held, that the signing of the contract of sale of the residence, coupled with a secret intention to abandon homestead rights, was not sufficient to abandon the homestead in it, and to designate the other house as plaintiff's homestead, so as to avoid the effect of the deed of trust executed on it.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused May 17, 1922.

**2. Homestead ⬥112—Executory contract of sale of homestead held not binding.**

An executory contract of sale of property in which plaintiff held a homestead was not a sale giving the purchaser a right which could be asserted superior to the homestead rights of plaintiff, since property constituting a homestead cannot by husband and wife be made subject to an executory contract.

**3. Homestead ⬥154 — Secret intention to abandon not sufficient, and property must be completely and finally abandoned before homestead ceases; "abandonment."**

Where land has been acquired for homestead purposes, or a homestead has been designated by actual use and occupancy, a mere secret intention to abandon the homestead therein is not sufficient, but there must be a complete and final abandonment of the use of such property for homestead purposes to terminate the homestead rights therein.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Suit by Catherine M. Staten and others against W. T. Harris and others. From a judgment dissolving temporary writ of injunction, plaintiffs appeal. Affirmed.

Short & Feild, of Dallas, for appellants. J. L. Goggans, of Breckenridge, and B. O. Baker, of Dallas, for appellees.

VAUGHAN, J. This is an appeal from a judgment dissolving a temporary writ of injunction restraining the sale by trustee of certain real estate described in deed of trust executed on the 17th day of February, 1920, by R. L. Staten and wife, Catherine M. Staten, appellants, and K. F. Yates and wife, Della P. Yates, to W. T. Harris, trustee, to secure Oak Cliff Lumber Company, one of the appellees, in the payment of a note in the sum of $6,116, dated the 17th day of February, 1920, due 90 days after date, executed by appellants and the said K. F. Yates and Della P. Yates. Said trustee, W. T. Harris, advertised certain property, known as the Live Oak street property, for sale under the terms of said deed of trust on the 6th day of December, 1921; the note secured thereby being due and unpaid. Appellants, on the 19th day of November, 1921, filed their petition for and obtained a writ of injunction restraining appellees from selling said Live Oak street property on the ground that same was prior to and at the time of the execution of said deed of trust the homestead of appellants and is now, and has so continued to be from the date of the execution of same up to the present time. Appellees filed answer denying under oath the material allegations contained in appellants' petition, and, based on such answer, filed motion to dissolve the temporary writ of injunction theretofore granted by Hon. Kenneth Foree, Judge of the Fourteenth judicial district. On hearing of said motion December 17, 1921, judgment was entered dissolving said temporary writ of injunction.

Only one question is presented, to wit: Was the following property:

"Beginning at a point in the S. E. line of Live Oak street 50 ft. north and 45 deg. east from the intersection of the S. E. line of Live Oak street with the N. E. line of St. Joseph street; thence S. 45 E. parallel with said line of St. Joseph street 172 ft. to an alley; thence N. 45 E. at right angles to St. Joseph street 50 ft.; thence N. 45 W. parallel with St. Joseph street 172 ft. to the S. E. line of Live Oak street; thence S. 45 W. along said line of Live Oak street 50 ft. to the place of beginning."

—situated in the city and county of Dallas, state of Texas (which will hereinafter be referred to as the Live Oak street property), included in said deed of trust, the homestead of appellants R. L. Staten and wife, Catherine M. Staten, on the date said instrument was executed?

Appellants are husband and wife, which relationship existed during the period of time covered by the following transactions: W. E. Shuttles and wife, by deed of date August 5, 1918, conveyed to appellant, Catherine M. Staten, the title to certain improved real estate located in the city of Dallas, which will hereinafter be referred to as the Gaston avenue property. Immediately after the purchase of this property appellants took possession of and occupied same as a family residence up to the 1st day of March, A. D. 1920.

The record does not show when or from whom or how appellants acquired title to the Live Oak street property prior to the 15th day of December, A. D. 1919, on which date appellants by deed of that date conveyed said property to O. W. Lovan. On the 17th day of November, 1919, O. W. Lovan purchased from the Dallas Telephone Company the improvements (which included a frame house) on a certain lot in Dallas, Tex., fronting on Bryan street, for the sum of $600. Appellants, on the 27th day of November, 1919, contracted with one Skaggs to move said house onto the Live Oak street lot.

On the 30th day of January, 1920, O. W. Lovan and wife, by deed of that date, reconveyed to appellant Mrs. Catherine M. Staten the Live Oak street property, being the same property described in said deed of trust.

Appellants, some time before January 27, 1920, had placed for sale the Gaston avenue property with J. W. Lindsley & Co., real estate brokers. Said Lindsley & Co. contracted a sale of said property to John E. Rosser by contract in writing of date January 27, 1920, on the following terms: Total consideration to be paid, $8,750, as follows: $2,000 cash, $5,000 payable five years after date, and $1,-

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

750 payable in installments of $437.50 each; possession to be delivered March 1, 1920. Contract to sell was not in person signed by appellants, only signed as to them by Lindsley & Co. Rosser, personally, signed same. To bind the contract of sale Rosser gave his check for $500 dated January 27, 1920.

On the 17th day of February, A. D. 1920, appellants and K. F. Yates and wife, Della Puritz Yates, executed a note in the sum of $6,116, payable to appellee Oak Cliff Lumber Company, a corporation, 90 days after date, with interest thereon from date until paid at the rate of 8 per cent. per annum, and, on the same date, executed and delivered to W. T. Harris, as trustee, for the use and benefit of Oak Cliff Lumber Company, their certain deed of trust conveying the legal title to certain tracts of land including the Live Oak street property to secure appellee in the payment of said note. Said deed of trust was duly signed, acknowledged, and delivered by the makers on the 17th day of February, 1920.

Appellants, by their deed of date February 25, 1920, conveyed the Gaston avenue property to John E. Rosser, and possession of same was delivered to him March 1, 1920, on which date appellants finally vacated said property.

Appellant R. L. Staten testified as follows:

"The Live Oak street property was not in fact occupied as a family residence prior to March 1, 1920. After I moved into the Gaston avenue property, and prior to the execution of the deed of trust in controversy, I designated the Gaston avenue property as my homestead. This was in connection with a loan made to me by Robt. Ralston & Co. It was my homestead at that time. The Live Oak street property was a vacant lot until some time after November, when I bought the house from the telephone company, and moved into it about March 1, 1920."

Appellant Mrs. Catherine M. Staten testified as follows:

"When we moved from the Gaston avenue property we went to a hotel and stayed there about two weeks—went from there to the Live Oak street property. It was completed by the 1st of March. I know that everything was over there then. Continuously until March 1st we lived in the Gaston avenue property."

Mr. J. Lawson Goggans testified as follows:

"I recall the transaction in which appellants and K. F. Yates and wife executed a deed of trust on some property situated on Live Oak street in block 741 of the city of Dallas, of date February 17, 1920, to secure payment of a note for $6,116, payable to Oak Cliff Lumber Company. I had a conversation with appellant R. L. Staten prior to that time, in which he explained to me that he was living at some other location, and that he had bought some property on Live Oak street, and had property there, or at least he had bought some building, if I remember correctly, and the building was be-

ing moved to make way for the present Haskell Telephone Exchange building, and that he was going to convert that building into two apartments of four rooms each, and he was hoping to sell the property; that he got it on a revenue basis. He told me the property he was giving a deed of trust on was not his homestead; that he was living somewhere else at the time, and had designated a homestead. He made said statements to me at the time of the execution of this deed of trust, and in connection with the execution of same. I know that Mr. Staten told me it was not his homestead. I explained to him that·I would not take a deed of trust on his homestead because I knew it would not be worth anything."

[1] The Gaston avenue property, by actual occupancy and use as a residence by appellants, and by deed of designation, became and was their homestead at the date the the deed of trust was executed on the Live Oak street property, unless the contract to sell the Gaston avenue property to John W. Rosser made by appellants on the 27th day of January, 1920, and the intention on the part of appellants at the time they acquired title to the Live Oak street property to erect a dwelling house thereon, and to make same their place of residence, was sufficient to constitute an actual abandonment of the Gaston avenue property as their homestead and the acquisition of homestead rights in the Live Oak street property.

[2] The executory contract of sale entered into January 27, 1920, by appellants and John W. Rosser to sell to Rosser the Gaston avenue property then constituting appellants' homestead did not vest title thereto in said Rosser, or amount to a sale of any character whereby a right could be asserted superior to the then existing homestead rights of appellants, but left the title and ownership in and possession of said property with appellees; which condition could not have been disturbed by action on the part of Rosser for specific performance, it being entirely optional with appellants whether or not they would carry out the executory contract by the execution of an absolute deed of conveyance, for, during the existence of the homestead rights, the property constituting the homestead cannot by the husband and wife made subject to the terms of an executory contract. Jones v. Goff, 63 Tex. 248.

[3] With reference to the legal effect one's intentions have in the acquisition of a homestead where no homestead in fact has been acquired, there is a material difference recognized as to the legal effect given one's intentions to abandon existing homestead rights. The liberal construction placed upon the intentions of one in the pursuit of acquiring a shelter for his family is to bestow the benign protection of the law so as to aid the one engaged in such laudable undertaking to realize the results of his efforts, while, on the other hand, the law contracts the effect to be given one's secret intentions to

abandon existing homestead rights, and such intentions play a small part in destroying such rights once established. It would be, indeed, a peculiar force which could be used to bless the efforts of one class and at the same time be destructive of the results of the efforts of others. The active principle of law which requires the final abandonment of "the intention ultimately to reside upon" a tract of unimproved land acquired for homestead purposes before the law will cease to protect same as a homestead during the time not actually occupied as such (Dobkins v. Kuykendall, 81 Tex. 180, 183, 16 S. W. 743, and authorities cited) applies with equal force where a homestead has been designated by actual use and occupancy, and, before the protecting care of the law will be withdrawn there must be a complete final abandonment of the use of such property for homestead purposes. As said by the Supreme Court in the case of Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177:

The "abandonment of a homestead occupied as such, cannot be accomplished by mere intention; there must be a discontinuance of the use, coupled with an intention not again to use as a home, to constitute abandonment, and without the abandonment of an existing homestead no right can exist to fix that character to another property, unless it be by way of addition to the existing homestead."

In the case of Bayless v. Guthrie (Tex. Com. App.) 235 S. W. 843, it was held that—

"homestead rights are not abandoned by mere intention, but the intention must be accompanied by a discontinuance of the use of the property as a homestead."

Appellants had owned the Gaston avenue property, and had been in possession of the same, using it as a homestead, since 1918, to February 27, 1920, and had not at any time used the Live Oak street property for homestead purposes. This condition existed at the time the deed of trust involved was executed on the Live Oak street property. Appellants are not, therefore, in position to defeat the enforcement of the lien created by said deed of trust by having prior thereto merely made an executory contract to sell their then existing homestead property, coupled with the declaration of their intention to abandon said property on which they were then living with the intention to reside on the Live Oak street property without an actual conveyance of the title or parting with the actual possession of the property on which they resided prior to the execution of said deed of trust. Powers v. Palmer, 36 Tex. Civ. App. 212, 81 S. W. 817, Allen v. Whitaker (Tex. Civ. App.) 27 S. W. 507; Henderson v. Texas Moline Plow Co., 109 Tex. 466, 211 S. W. 973; H. & G. N. R. Co. v. Winter, 44 Tex. 597, 614, 615; Philleo v. Smalley, 23 Tex. 503.

A careful examination of the many cases dealing with the vexatious question involved, while disclosing a contrariety of opinions on some issues by reason of the varied facts of each case, will be found to be uniform in adhering to that interpretation of the exemption laws which sustain the benefits thereof when once attached, refusing to remove same without a good and substantial cause. In other words, the power which created is wielded to preserve the benefits of the rights existing thereby, for to create merely to be destroyed would be but a snare and a delusion, and it is the uniform enforcement of our homestead laws to preserve the rights secured thereunder which has been the bulwark of the citizenship of this state. Scheuber v. Ballow, 64 Tex. 166. This rule of law will not be relaxed even to aid one to divest himself of existing homestead rights, for this can only be accomplished through acts meeting the requirements of the law in this respect. There are cases, and this one comes within that class, where to permit one to shift his homestead claims from one piece of property to another would amount to a rank injustice, and would be permitting that which was intended to be used only for a blessing to become a means of oppression. H. & G. N. R. Co. v. Winter, supra.

We conclude, under the law and the evidence, that the Live Oak street property was not the homestead of appellants on the 17th day of February, 1920, the date of the deed of trust involved, and is not now subject to appellants' homestead claim, but is subject to the lien created by said instrument. Therefore the judgment of the court below is affirmed.

Affirmed.