## JEFFERSON COUNTY INVESTMENT & BUILDING ASS'N v. GADDY et ux.

### No. 2852.

Court of Civil Appeals of Texas. Beaumont.
Jan. 22, 1936.

Rehearing Denied Jan. 29, 1936.

**296**

Crook & Cunningham, of Beaumont, for appellant.

Sonfield, Sonfield & Murphy and C. A. Lord, all of Beaumont, for appellees.

O'QUINN, Justice.

Appellant was plaintiff below. In its original petition it sought to recover upon a promissory note in the sum of $4,800, and prayed for judgment in such amount with interest and attorney's fees. It alleged that it had a deed of trust lien executed by J. Homer Gaddy and his then living wife, Ida Gaddy, covering lots 7 and 8 in block 1 of the Pecan Grove addition to the city of Beaumont, Jefferson county, Tex., given to secure the payment of said note, and prayed for a foreclosure of said lien. We shall hereinafter refer to this as the Pecan Grove property. By amended petition appellant declared upon the same note and alleged the deed of trust lien, and further alleged that it had a constitutional materialman's lien against the property which it had acquired from the Neches Lumber & Building Company, and prayed for foreclosure of both liens.

Appellees, defendants below, answered by general denial and specially that the alleged liens asserted by appellant were wholly void because the Pecan Grove property upon which the deed of trust lien was given to secure the payment of the note was the homestead of said J. Homer Gaddy and his wife, Ida Gaddy, at the time of the execution of said deed of trust, October 14, 1929, and that said property had been their homestead since July 20, 1929, and had been used and occupied by them as such ever since said date.

The case was tried to a jury, and at the conclusion of the evidence appellant filed its motion for an instructed verdict in its favor for the amount due on the note and for foreclosure of its constitutional and deed of trust liens on the Pecan Grove property. The court granted the motion to the extent of the amount of the note together with interest and attorney's fees, but refused the motion as to foreclosing either of the asserted liens, and so instructed the jury, whereupon verdict was so returned and judgment accordingly rendered. We have the case on appeal.

The material facts are without dispute. Briefly, they are: On July 20, 1929, J. Homer Gaddy was a married man, the head of a family, and on that date, and for several years prior thereto, he owned lot 4 and the east one-half of lot 5 in block 27 of the Averill addition to the city of Beaumont, Jefferson county, Tex., on Calder avenue in said city, together with all improvements thereon, and occupied and used same as his homestead. This will be referred to as the Calder avenue property. At said date he also owned lots 7 and 8 in block 1 of the Pecan Grove addition to the city of Beaumont. There was then an old residence building on said property. In August, 1929, he began repairing or remodeling this old residence house on the Pecan Grove property, intending, he testified, to at some time occupy and use it as his home and to sell the Calder avenue property. In his effort to carry out this intention, he entered into an oral understanding with one T. M. Schmitt some time in September, 1929, to sell him the Calder avenue property, and on September 25, 1929, accepted from Schmitt a check for $100 as earnest money to bind the deal. There was no written contract with Schmitt to sell him the property, and, at the time the oral agreement to sell was made, Gaddy and family were residing on said property.

On October 14, 1929, Gaddy and his wife, Ida Gaddy, executed to the Neches Lumber & Building Company their promissory note in the sum of $4,800, payable one year after date, in payment for costs of material, labor, and other expenditures in repairing and remodeling the house on the Pecan Grove property, and on said date also executed to R. F. Du Bois, as trustee for the use and benefit of said company, a deed of trust on said property securing the payment of said note. In this deed of trust Gaddy and wife declared that said Pecan Grove property "forms no part of any property by him owned, used or claimed as exempted from forced sale under the laws of the state of Texas, and disclaims and renounces all and every claim thereto under any such law or laws, and hereby designates the following described property, to-wit: Lot Four (4) and the

east half (E. ½) of Lot Five (5) in Block Twenty-seven (27) of the Averill Addition to the city of Beaumont, Jefferson County, Texas; as his homestead, and as constituting all of the property (of nature similar to that herein conveyed) owned, used or claimed by him as exempt under said laws." At said date, October 14, 1929, Gaddy and wife were residing upon their Calder avenue property. The deed of trust was placed of record October 15, 1929.

On October 16, 1929, Gaddy and wife, Ida Gaddy, executed and delivered to T. M. Schmitt their deed conveying to him the Calder avenue property, and on same day they moved from the Calder avenue property to the Pecan Grove property, and Schmitt moved into the Calder avenue place. Gaddy testified that prior to October 14, 1929, he had moved some of his household goods, such as could be moved in his automobile by his wife and a negro yard boy, but all of their heavy household goods was moved out to the Pecan Grove place on October 16, 1929. It was not contended that appellant knew that appellees had moved any of their household goods prior to October 14, 1929, or that Gaddy had accepted the check for $100 earnest money to bind the sale of the Calder avenue property to Schmitt. It is admitted by appellant that it knew for some time before the actual removal from the Calder avenue place by Gaddy that he intended to move to the Pecan Grove property when the remodeling was completed, and that he intended to sell the Calder avenue place.

November 21, 1929, the Neches Lumber & Building Company duly transferred and assigned its note for $4,800 against Gaddy and wife and the deed of trust lien on the Pecan Grove property securing the payment of the note to appellant. The note and deed of trust in favor of the Neches Lumber & Building Company were executed by the Gaddys and then transferred to appellant according to an understanding on the part of the several parties made before the instruments were executed.

Gaddy testified that on July 20, 1929, while he was residing upon his Calder avenue property, and which he for years had occupied and used as his home, he did not claim same as his homestead, and that it was not his intention to ever again claim or to occupy same as his homestead, but that on said date he claimed and at all times after said date had the definite and fixed intention to occupy and use the Pecan Grove property as a home for himself and family, and that it was then his intention to about the 1st of October of that year move from the Calder avenue property to the Pecan Grove property, and that with the consent of Schmitt, the man with whom he had orally agreed to sell the Calder avenue property, he continued to occupy said Calder avenue property until October 16, 1929, when he and his wife, Ida Gaddy, by deed conveyed the Calder avenue property to Schmitt, and on said date he moved from the Calder avenue place and Schmitt took possession of same, and he (Gaddy) moved into the Pecan Grove place and has since continuously resided thereon, using and claiming same as his homestead.

It is contended by appellant that, as the deed of trust lien was executed by Gaddy and wife on October 14, 1929, on the Pecan Grove property, at which time they resided upon the Calder avenue property which had been occupied and used by them for several years prior to said date as their home, and they had never actually occupied or used the Pecan Grove place as a home, but moved onto same on October 16, 1929, the deed of trust lien was valid, and the court erred in refusing to decree a foreclosure thereof in favor of appellant.

It is contended by appellees: That, though the Calder avenue property was the homestead of Gaddy and family in July, 1929, and for several years prior thereto had been so occupied and used, still at said time, July, 1929, he (Gaddy) "decided to remodel and improve the dwelling house on the Pecan Grove property and to thereafter use and occupy the same as the homestead, and he decided to abandon the Calder avenue property as the homestead and to not return to it in the future, and to sell same." That "about the first of August, 1929, he commenced the work of remodeling and improving the Pecan Grove property and continued the work until it was completed, having at all times the fixed and definite intention of making the Pecan Grove property the homestead and of occupying the same as such with his family, and after completing the work of remodeling and improving the same he moved into the Pecan Grove property with his family and they have resided there ever since." Whereby, they say, the Calder avenue property had been and was absolutely abandoned as the homestead of appellees, and the Pecan Grove property had become and was impressed with the homestead char-

298

acter and was the homestead of appellees on October 14, 1929, the date of the execution of the deed of trust in question, and was not subject to such lien, and said deed of trust and lien therefore was and is void, and the court did not err in so holding and refusing to foreclose same.

As reflected by the undisputed facts, supra, in July, 1929, Gaddy owned and resided with his family upon the Calder avenue property as his home. He had thus resided for years. At said time he also owned the Pecan Grove property which had an old dwelling house on it. He formed the intent to remodel this old house and to abandon the Calder avenue place as his home and to sell same, and, when the improvements on the Pecan Grove place were completed, to then move to said property and occupy it as his home. His intention to abandon the Calder avenue place as his home, he says, was definite and fixed from in July, 1929, to October 16, ·1929, when the remodeling of the Pecan Grove property was completed and he moved to same. It thus appears that appellees' abandonment of the home place on Calder avenue before October 14, 1929, was by intent only; he had continued to occupy and use with his family the Calder home place all the time after forming the intent to abandon same and to sell same up to and until October 16, 1929, when he actually left the place and sold it to Schmitt, and he (Gaddy) moved to the Pecan Grove place.

■ It has long been well settled in this state that homestead rights cannot be abandoned by mere intention. The intention to abandon must be accompanied by an actual discontinuance of the use of the property; its occupancy must cease. Gaddy had owned the Calder avenue property and had been in possession of same, using it as his homestead for many years prior to October 16, 1929, and had not at any time used the Pecan Grove property for homestead purposes. This condition existed on October 14, 1929, at the time the deed of trust involved was executed on the Pecan Grove property. Appellees therefore are not in position to defeat the enforcement of the lien created by the deed of trust by having prior thereto made an executory contract or oral agreement with Schmitt to sell to him their then existing homestead, the Calder avenue property, coupled with their intention to abandon said property upon which they were then residing with the further intention to move to and reside upon the Pecan Grove prop-

erty, without an actual conveyance of the title to or parting with the actual possession of the Calder avenue property upon which they resided prior to and at the time of the execution of the deed of trust. Archibald v. Jacobs, 69 Tex. 248, 6 S.W. 177, 178; Sharp v. Johnston (Tex.Sup.) 19 S.W. 259; Clem Lbr. Co. v. Elliott Lumber Co. (Tex.Com.App.) 254 S.W. 935, 938; Staten v. Harris (Tex.Civ.App.) 239 S.W. 334 (writ refused); Bayless v. Guthrie (Tex.Com.App.) 235 S.W. 843; Pierce v. Langston (Tex.Civ.App.) 193 S.W. 745, 747; Neece v. King (Tex.Civ.App.) 73 S.W.(2d) 550, 551; Karr v. Cockerham (Tex.Civ.App.) 71 S.W.(2d) 905; Wilson v. Levy (Tex.Civ.App.) 13 S.W.(2d) 971.

In Archibald v. Jacobs, supra, it was held: "Abandonment of property actually homestead cannot be accomplished by mere intention. There must be a discontinuance of the use, coupled with an intention not again to use as a home, to constitute abandonment."

In Sharp v. Johnston, supra, the Supreme Court said: "The evidence shows that during this time Johnston and wife made some slight improvements on the lot in controversy, with a view to making it their future home. The evidence is that, at the time these improvements were made, they were in actual possession of another home in Dallas, and residing upon and using it as a home. This other home, prior to the sale of the lot in controversy, was never abandoned. The evidence, at most, only shows that they improved the lot in controversy for the purpose of ultimately making it their home when they abandoned their old homestead. This they had never done. They would not be permitted to enjoy two homes at the same time. The improvements of this property, with the intent to make it their home, would not invest it with the homestead character, as long as they were in possession of the old home."

In Clem Lbr. Co. v. Elliott Lumber Co., supra, it is said: "There is no contention that the property in San Antonio owned by Mrs. Mitchell and actually occupied by her and her husband and children did not constitute a homestead under our Constitution and laws at and prior to the acquisition by defendant of the lot in Eastland. Defendant does not contend that he was entitled to two different residence homesteads at the same time. The gist of his contention is that the intent of himself and his wife to vacate said property at San Antonio at

some future time and to improve and occupy the Eastland property as a home, coupled with steps toward carrying such purpose into effect, divested the San Antonio property at once of its homestead character, notwithstanding they continued to own and occupy the same, and immediately impressed the Eastland property with such character. The authorities in this state are against such contention. Abandonment of an existing homestead in actual use is a condition precedent to the acquisition of another homestead separate and apart from the former. Such abandonment cannot be accomplished by mere intention. There must be a discontinuance of the use of the former homestead, coupled with an intention not to again use it as such. Without such abandonment no right to establish a separate and distinct homestead on other property exists." (Citing many authorities.)

In Pierce v. Langston, supra, it is said (quoting from Archibald v. Jacobs): "Where no homestead dedicated by actual occupancy exists, effect must be given to ownership, intention, and preparation to use for a home, or otherwise one indebted might never be able to secure a home for a dependent family. This was recognized in Franklin v. Coffee, 18 Tex. [413] 417, 70 Am.Dec. 292; Barnes v. White, 53 Tex. 628; Swope v. Stantzenberger, 59 Tex. [387] 390; Gardner v. Douglass, 64 Tex. [76] 79. But no case was given to the extent of holding, when there was a home in fact, that this might be abandoned while actually used as the home of the family, and another homestead acquired by intention at sometime in the future to use it as a home, accompanied with preparation to so improve it, as to make it suitable for such a use."

And: "The answer to the first question is that appellees, having one homestead, could not acquire another until the existing homestead was abandoned, and such abandonment could only be accomplished by removal from and cessation of use of the existing homestead, and therefore their reason, or attempted excuse, for remaining in possession of the existing homestead becomes immaterial. It is the fact that they remained in possession of the existing home, and not their reason for so doing, that shows that they had not abandoned that homestead."

In Neece v. King, supra, it is said: "When a homestead has once been acquired, it can be abandoned in no other way than by moving therefrom with the inten to abandon the same as a home. Abandonment of an existing homestead in actual use is a condition precedent to the acquisition of another homestead, separate and apart from the former. Such abandonment cannot be accomplished by mere intention. There must be a discontinuance of the use of the former homestead, coupled with an intention not to again use it as such."

It is earnestly insisted by appellees that, having formed the definite and fixed intention in July, 1929, to abandon their Calder avenue place as a home and to sell same and to make the Pecan Grove property their homestead and to occupy and use same as such when the improvements thereon were finished, and the oral agreement with Schmitt to sell him the Calder avenue place, and their acceptance from Schmitt of a check for $100 on September 25, 1929, as earnest money, their abandonment of the Calder avenue place as a home was then complete and effective, and the Pecan Grove property then and there became their homestead.

■ This contention is without merit. The agreement to sell the Calder avenue place to Schmitt was an executory contract of sale, and did not vest title thereto in him or amount to a sale of any character whereby he could assert a right superior to the then existing homestead rights of the Gaddys, but left the title and ownership in, and possession of said property with, them, which condition could not have been disturbed by an action by Schmitt for specific performance of the oral agreement to sell, because it was wholly optional with appellees whether or not they would carry out the executory contract by the execution of an absolute deed of conveyance, for, during the existence of the homestead rights, the property constituting the homestead cannot by the husband and wife be made the subject of an enforceable executory contract to sell. Jones v. Goff, 63 Tex. 248; Staten v. Harris (Tex.Civ.App.) 239 S.W. 334, 336 (writ refused); 22 Tex. Jur. p. 112, § 78.

From what we have said it follows that that portion of the judgment awarding appellant judgment against appellees for the amount of the note, interest, and attorney's fees should be affirmed, and that part refusing appellant a foreclosure of its deed of trust lien on the Pecan Grove property

should be reversed, and judgment here rendered for appellant foreclosing its said lien, and it is so ordered.

Affirmed in part, and reversed and rendered in part.