PELPHRET, C. J.
The findings of fact and conclusions of law filed by the trial court will, we think, serve as a statement of the facts, and will be here quoted:
“In the El Paso County Court at Law of El Paso County, Texas.
“J. M. Ingram, Plaintiff, v. Mrs. Nettie Summers, Defendant, and Marr-Piper Company, Garnishee. No. 10570.
“Be it remembered that cause No. 10,569, entitled J. M. Ingram v. Mrs. Nettie Bummers, on the docket of this court was tried in this court on November 27, 1929, and upon the finding of the jury judgment was rendered in favor of plaintiff against the defendant, Mrs. Nettie Summers, for the sum of $122.50, together with all costs, which judgment is now of record in this court unappealed from and unsatisfied, and thereafter, towit:
“On the 17th day of December, 1929, the above styled and numbered cause was tried before the court at the conclusion of which the court entered judgment for the intervenor or defendant, Mrs. Nettie Summers, and at the request of the plaintiff, J. M. Ingram, the court hereby files his finding of fact, and conclusions of law in connection with the above statement.
“I find that some five years ago, Mrs. Nettie Summers and her husband were then living in Detroit, Mich., that they owned at that time a duplex house upon one of the streets of said city which is denominated by the witnesses, as a two family flat; that Mrs. Nettie Summers and her husband lived in one of said flats and rented the other out;
“I further find that about five years ago, owing to sickness of herself and husband, they left said property and'went to a sanatorium in the suburbs of said City, after which time the said two family flat was rented out at approximately $90.00 per month, and that there is now due approximately $800.00 upon said two family flat, and that said two family fiat is worth approximately $7000.00, and the same is now owned by Mrs. Nettie Summers, and that said $800.00 is the only lien upon said two family flat;
“I further find that about three years ago on account of illness of herself and husband, Mrs. Nettie Summers, and her said husband removed from the sanatorium in the suburbs of Detroit, Mich., and came to El Paso, Texas;
“I find that approximately 12 months ago or around January 1, 1928, Mrs. Nettie Summers and her husband purchased the property at 2723 Sacramento Street, in the City of El Paso, Texas, and moved thereon and lived there on it as their home until the-day of January, 1929, at which time the husband of Mrs. Nettie Summers died;
“I find that said property at-2723 Sacramento street was encumbered for approximately $1600.00; •
“I find that on or about May 24, 1929, said property at 2723 Sacramento street was sold to W. P. Massengill for the sum of $2450.00, three hundred and fifty dollars cash, the assumption of $1600.00 due against the place and gave notes for the balance, payable at rates of $45.00 per month, and thereafter the said Massengills moved in upon said property and are now living upon said premises.
“I find that on or about the 24th day of May, 1929, the contract of sale was entered into between Mrs. Nettie Summers and the Massengills in the office of the garnishee herein, and that the cash payment of $350.00 was placed with Marr-Piper, the garnishee here *449 in, as forfeit money to bind the contract of sale;
“I find that thereafter, to-wit: on or about the 29th day of May, 1929, the plaintiff herein, J. M. Ingram, instituted suit in Justice' Court against Mrs'. Nettie Summers and on the 29th day of May, and on the 31st day of May, said plaintiff caused writs of garnishment to issue out of said Justice Court against the said Marr-Piper, garnishee, impounding the said $350.00 above mentioned and designated, and that after a trial in Justice Court both cases .came by appeal to this court and were numbered and docketed in this Court and have been .disposed of in this court as herein indicated;
“I find that after the death of her said husband, Mrs. Nettie Summers stated to the plaintiff, to the plaintiff’s wife, and to others, that she was selling the property because after her husband’s death she was afraid to stay by herself, that she didn’t care to live alone and that it was cheaper to board or live in an apartment house than it was to keep house, and that she didn’t intend further to keep house; that these were the reasons she assigned at that time for the selling of this property.
“Conclusions óf Law.
“I conclude, as a matter of law, that the Legislature of the State of Texas, in enacting article 3834, Revised Civil Statutes, of Texas, in 1897, had in view the rules of law laid down in Moursund v. Priess, 84 Tex. 554, 19 S. W. page 775, and cases therein cited, holding that the proceeds of the voluntary sale of a homestead was subject to garnishment.
“I conclude, as a matter of law, that in enacting article 3834 as above indicated, it was the intention of the Legislature to hold in-‘ violate and intact the proceeds of the voluntary sale of the homestead for a period of six months after such sale, and render judgment as herein indicated.”
Upon motion of appellant the court made the following additional findings:
“Cause No. 10569 was tried before a jury and upon the findings of that jury judgment was entered in that case based upon the findings of the jury, that plaintiff recover of and from defendant $122.50 and all costs, in deference to the findings of the jury.
“Cause No. 10570 was tried before the court and the findings by the court already filed herein.
“Complying with request No. 1, the court finds that from the evidence introduced upon the trial of Cause No. 10570, that the house and lot and other improvements at 2723 Sacramento street, in the City of El Paso, was the homestead of Intervenor, Nettie Summers, and that she continued to reside thereon until the same was sold to the Massengills, which the court conceives to be abandonment of that property as a homestead.
“In compliance with request No. 2, the court finds from the undisputed evidence submitted upon the trial of cause No. 10570, that the defendant Nettie Summers sold the property at 2723 Sacramento Street, El Paso, Texas, to the Massengills, moved therefrom and gave possession thereof to the Massengills, which the court conceives to be abandonment of that property as a homestead.”
The garnishee, upon being served with the writ, filed its answer setting up among other things that the $350 in its hands was the proceeds of the sale of Mrs. Summers’ homestead and therefore not subject to garnishment. Mrs. Summers also intervened setting up the same defense.
 The view we take of this case is that its proper disposition depends upon the one question of whether there had been an abandonment of the homestead before the money was placed in the hands of garnishee. If there had in fact been an abandonment, the article 3834, Revised Statutes, would not apply and the money would be subject to garnishment, while, if there had been no abandonment prior to said time, then this judgment should be affirmed.
In the recent case of Wilson v. Levy, 13 S.W.(2d) 971, 973, the Beaumont Court of Civil Appeals in discussing the question of the abandonment of a homestead used the following language:
“The homestead continues the homestead as long as it is owned, occupied, and used as such. It ceases to be the homestead only when it is abandoned as such. When the use of the homestead has been abandoned, and the owners are not in actual possession, abandonment then may become a question of intent. But as against actual ownership, use, and possession, when once the property has been designated as a homestead, its abandonment as such cannot be shown by the confessed intent of the owners, no matter how strong the- proof of intent may be, to abandon and acquire a new one while such ownership, use, and occupancy continue.”
In support of this holding the court cites several decisions of the Supreme Court, among which is Archibald v. Jacobs, 69 Tex. 248, 6 S. W. 177.
Mrs. Summers testified on this question as follows:
“The property in this suit referred to is number 2723 Sacramento street that was sold to Mr. and Mrs. Massengill. I vacated the house and gave them possession June 24, 1929. My husband and I purchased that property on the 15th of May, 1928, as a home and we then immediately moved into it and I continued to live in it until it was sold as above stated. My husband died the 22nd day of *450 January, 1929,1 had no other property that I claimed as my homestead during the time I occupied this property. Tes, I have other property.' It is in Detroit, Michigan. * * * I have not claimed the Detroit property as my homestead since coming to El Paso. I never expect to go back to Detroit. I expect to live in this climate on account of my health.”
This testimony, we think, supports the finding of the trial court that the property in ■ question was the homestead of Mrs. Summers up to the time of its sale and that there had been no abandonment of it as such until the sale to the Massengills.
If we are correct in this, then the money in the hands of the garnishee was the proceeds of the voluntary sale of the homestead, and was therefore not subject to garnishment, unless the owner thereof had in some manner waived such exemption. We find nothing in the record tending to show a waiver of her rights as to the money, after it came into the hands of the garnishee, and therefore the only way it could be subject to garnishment would be for the six months provided for in the statute to expire.
' Appellant contends that the court erred in not rendering judgment for appellant for the reason that the court found in the additional findings that Mrs. Summers had abandoned her homestead at the time and before the sale and that the court further concluded as a matter of law that she had so abandoned her homestead.
We do not so interpret the court’s findings.
The court does say that he conceives the sale and delivering of possession of the property to be an abandonment of the homestead, but nowhere, do we find any finding or conclusion that any 'abandonment occurred other than by such acts on her part.
Certainly the sale and delivery'of possession to the purchaser by her would constitute an abandonment of her claim of homestead to the property conveyed, but upon the happening of those events arises the condition jvhich the Legislature had in mind when they enacted the statute exempting the proceeds of the voluntary sale of the homestead from garnishment and forced sale.
The Legislature evidently realized that conditions might and probably would arise when it would be to the best interests of the family that the homestead should be sold, and if the proceeds of such a sale was in no way protected, then the beneficent provisions of our Constitution would be of no avail and the protection afforded ,the family would be lost.
The failure of the court to make the findings requested as to the custom among real estate agents and brokers, and as to the segregation of the commissions from the proceeds of the sale, seems to us tó be immaterial as to the ultimate issue in this case. As long as the property remained the homestead of Mrs. Summers, she could incumber it only for the purposes provided in our statutes and any acts or agreements made by her as to the purchase money could not serve as a waiver of her exemption as to it until the right to claim such exemption arose, which was after the sale was made.
Nor can we see how her right to claim the exemption could be governed by any custom among the real estate agents and brokers. Appellant further contends that the court erred in allowing the garnishee an attorney’s fee for making answer to .the writ of garnishment for the reason that the garnishee in its answer pleaded matters in its own behalf.
The law appears to us to be that where the funds sought to be garnished are exempt, it is the duty of the garnishee to set up such defense in this answer. Mo. Pac. Ry. Co. v. Whipsker, 77 Tex. 14,13 S. W. 639, 8 L. R. A. 321, 19 Am. St. Rep. 734; Russell v. Hamilton (Tex. Civ. App.) 174 S. W. 705. Therefore the pleading of garnishee in this case that the funds in its hands were exempt as the proceeds of the sale of a homestead cannot be used as a reason for denying them the recovery of an attorney’s fee.
. We have examined the different assignments carefully and have reached the conclusion that the judgment rendered was the proper one to be rendered under the facts, and it is accordingly affirmed.
HIGGINS, J., did not sit in this case.