## MAURY v. MIRELES et ux.

### No. 3316.

Court of Civil Appeals of Texas. El Paso.

April 2, 1936.

Rehearing Denied April 30, 1936.

Johns, McCampbell, & Snyder and Russell Savage, all of Corpus Christi (H. P. Drought, of San Antonio, John S. McCampbell, of Corpus Christi, and Rob't. W. Stayton, of Austin, of counsel), for appellant.

J. D. Todd, Jr., J. D. Todd, and Jack R. Todd, all of Corpus Christi, for appellees.

PELPHREY, Chief Justice.

On January 3, 1924, F. A. Migl and wife deeded lots 1 and 2, block 3, Mussett addition to Corpus Christi, to appellees, for a consideration of $2,000. Appellees paid $300 in cash and executed a vendor's lien note for $850 payable in monthly installments of not less than $15 principal per month, and one for $850 payable five years from date.

On October 25, 1926, Migl and wife transferred to John L. Tompkins the $850 note due five years from date. The transfer contained a recital that the $850 note payable in monthly installments had been paid and the lien discharged.

On November 2, 1926, Tompkins released all the property from the lien then held by him except the east 40 feet of the south 100 feet of lot 2.

On this same date Tompkins transferred the vendor's lien against the east 40 feet of the south 100 feet of lot 2 to Larkin F. Price, and Mireles and wife executed a deed of trust to H. S. Guy, trustee, conveying the east 40 feet of the south 100 feet of lot 2, securing the payment of a note for $850 dated November 2, 1926, and due five

years from date and being in extension and renewal of the note given by Mireles and wife to Migl on October 25, 1926.

Mireles and wife, at the same time, executed a mechanic's and improvement lien contract with John L. Tompkins for the construction of two houses on lot 1 and lot 2, except the east 40 feet of the south 100 feet of lot 2; a note for $3,792 payable to Tompkins in monthly installments of $54.34 each; a deed of trust on the property to H. S. Guy, trustee, to secure the payment of the note; and a designation of homestead naming the east 40 feet of the south 100 feet of lot 2, as their homestead. At the same time Tompkins transferred the deed of trust lien and note to Larkin F. Price.

On September 2, 1930, H. S. Guy, trustee, executed trustee's deeds to appellant to all of lots 1 and 2. The first deed being to the east 40 feet of the south 100 feet of lot 2, and in foreclosing the deed of trust lien securing the $850 note and the second being for all of lots 1 and 2 except the 40 feet above, foreclosing the deed of trust lien securing the $3,792 note.

On September 25, 1930, appellant conveyed both lots 1 and 2 to Mireles and wife for a consideration of $4,113.20 payable in 59 installments, the first 58 being for $85 each and the last being for $52.27. A vendor's lien was retained in the deed, and the note given for the purchase price was further secured by the execution of a deed of trust on the property to H. S. Guy, trustee.

On June 8, 1932, H. S. Guy, trustee, by trustee's deed, again conveyed the property to appellant foreclosing the deed of trust given to secure the $4,113.20 note.

On the 14th of the same month appellant brought this suit and sequestered the property. Appellees, on June 2, 1932, executed a replevy bond in the sum of $10,000, with Paul Cox, Juan Galvan, and Sra. Sabina G. de Rodriguez, as securities.

In the record there appears an original and four supplemental petitions filed by appellant and an original and three supplemental answers filed by appellees, the latter two containing cross-actions, in which a cancellation of the several instruments purporting to create liens against their property is sought.

In her several pleadings appellant alleged ownership of and right to the possession of the property by virtue of the trustee's deed to her; sought to recover the value of the fruits and revenues of the property from the filing of the replevy bond to the date of the filing of her first supplemental petition, and sought to have an equitable lien established against the property to secure the sum of $4,000 which she alleged she had furnished, in good faith and without notice of any irregularity, to build the two houses.

Appellees generally denied all the allegations of appellant, pleaded not guilty, fraud, homestead, the statutes of limitation, and payment.

Thirty-nine special issues were submitted to the jury and they found: That John L. Tompkins represented Larkin F. Price and appellant in the carrying out of the transaction for the building of the houses and in taking up and extending the $850 Migl note; that he was present when the acknowledgment of Mrs. Mireles was taken on November 2, 1926; that Mr. Mireles was not required to retire by the notary and was also present; that Mireles knew that he signed a dedication of homestead limiting it to the east 40 feet of the south 100 feet of lot 2, but that Mrs. Mireles did not know that she signed such an instrument, that they both would have signed such dedication if they had understood that it did not include all of lot 2, that the notary who took the acknowledgement of Mrs. Mireles to the instruments executed on November 2, 1926, failed to explain the instruments to her and failed to require her to indicate and declare that she acknowledged them to be her act and deed, that she had willingly signed them and did not wish to retract them; that appellant furnished all or part of the funds to finance the building of the two houses and to take up the $850 note; that Mireles instructed Tompkins, as the agent of appellant and Price, to apply a sufficient amount of the monthly payments to pay the Migl note, but that Tompkins did not agree to do so; that appellees would have refused to execute the papers if Tompkins had refused to so apply the payments; that appellees knew that the payments were not being so applied; that they learned such fact about the time this suit was filed; that the $3,792 was used solely for the building of the two houses; that some of the money furnished by Price or appellant was expended on lot 2; that Mireles understood that lot 2 was to be covered by a lien other than the lien securing the $850 note, but Mrs. Mireles did

not; that Price did not either for himself or as agent of appellant during August or September, 1933, agree with appellees to extend the time of payment; that appellees were not induced by any such promise to sign the deed of trust of September 25, 1930, believing it to be an extension agreement; that Mireles was present when his wife acknowledged the papers on September 25, 1930; that the notary failed to fully explain the papers to Mrs. Mireles, but that he required her to indicate and declare that she acknowledged them; that she had willingly signed them and that she did not wish to retract her signature; that C. W. French and Stewart Title Guaranty Company were the agents of appellant and of Price in the transaction of September 25, 1930; that appellees understood that the $4,113.20 note was an extension note and not a purchase-money or vendor's lien note; that French failed to read or explain the deed purporting to convey the lots from appellant to appellees; that appellees knew the contents of such deed; that they did not authorize either its preparation or execution; that neither of them accepted it or authorized its acceptance; that it was never delivered to them; that neither of them filed it for record; that neither appellant nor her agent, De Cordova, had cause to fear that appellees would make use of the possession of the property to convert to their own use the fruits and revenues thereof; that the reasonable rental value of the property from June 11, 1932, to time of trial was $870; and that at and prior to November 2, 1926, Mireles was permanently renting the houses then on lot 1 and intended to rent permanently the other two houses when constructed.

Upon these findings judgment was rendered that appellant take nothing and that the title claimed by her in lots 1 and 2 be divested out of her, and that full fee-simple title thereto be vested in appellees free from any claims asserted by her.

### Opinion.

Appellant in her second proposition contends that the wife's joinder was unnecessary to the validity of either the deed of trust securing the $850 note in renewal of the original purchase price note, or to the deed of trust securing the note for the improvements.

As to the first, she asserts that the husband has the right to renew and extend an original purchase-money obligation and to secure it by a deed of trust.

This contention finds support in the case of National Bank of Commerce of Houston v. Irvine (Tex.Civ.App.) 73 S.W.(2d) 929 (writ refused) and authorities there cited.

Appellees counter, however, with the proposition that the judgment in so far as that note is concerned should be affirmed because of the findings of the jury that Mireles instructed Tompkins to apply a sufficient amount of the first $60 a month payments to pay off the $850 Migl note, and that they would have refused to sign the papers on November 2, 1926, if he had refused to so apply or cause to be so applied such payments.

The correctness of this position depends primarily upon whether Tompkins was the agent of appellant and Price. She contends quite strenuously that there is no evidence establishing the agency of Tompkins; that, at the most, the finding of agency is against the overwhelming preponderance of the evidence; and that even if sufficient to establish agency, it was not sufficient to show his authority to attend to the application of payments to be received thereafter by his principal. It would unnecessarily prolong this opinion to attempt to detail the evidence on the question, and we shall not do so. We have reached the conclusion, however, that the jury was warranted from the circumstances before it in finding that Tompkins was the agent of appellant and Price in the transaction of November 2, 1926, and we have further concluded that if he had the authority to contract for them as to the payments to be made, he also had the power to bind them to apply the payments so made to the discharge of such portion of the indebtedness as Mireles might direct.

The debtor having the primary and paramount right to direct the application of his payments, 48 C.J. § 87, p. 643, and Texas cases cited in note 57, Mireles is now entitled to have the sums paid by him applied as he directed. It is undisputed that such an application would have resulted in the payment of the $850 note long before any sale was made by the trustee under the deed of trust on the east 40 feet of the south 100 feet of lot 2.

In this state of the record the trial court properly vested title to the east 40 feet of the south 100 feet of lot 2, block 3, in appellees. As to the deed of trust securing the note for the improvements on the remainder of lots 1 and 2, appellant contends that the facts show an abandonment of

such remainder as a part of the homestead, and therefore neither the wife's signature nor acknowledgment was necessary to its effectiveness. The following sketch was made by Mireles and was introduced in evidence:

The houses appearing on the north end of lot 1 had been built in 1924 and 1925, and had, as found by the jury, been rented out permanently. That part of the lots necessary to their proper use can be said to have been abandoned for homestead pur-

TEX-MEX PROPERTY

poses, and, therefore, will be subject to the debt placed thereon by Mireles, and the signature of the wife would be unnecessary. As to the remainder of the lots with the exception of the·east 40 feet of the south 100 feet of lot 2, the question is more difficult.

It has been long established in this state that abandonment of property actually homestead cannot be accomplished by mere intention. Archibald v. Jacobs, 69 Tex. 248, 6 S.W. 177.

We find the following cases, however, holding facts practically identical with the facts of the case at bar sufficient to effect the segregation of a portion of the homestead. Strang v. Pray, 89 Tex. 525, 35 S.W. 1054; Ferguson v. Smith (Tex.Civ. App.) 206 S.W. 966 (writ refused); Lipscomb v. Adamson Lumber Co. (Tex.Civ. App.) 217 S.W. 228; Atwood v. Guaranty Construction Co. (Tex.Com.App.) 63 S.W. (2d) 685.

The question of abandonment is generally one of fact. 22 Tex.Jur. § 53, p. 81, but the finding of the jury here that Mireles intended permanently to rent the houses to be built meets that requirement and that portion of the lots necessary for the use of the houses shown on the map on the southwest corner of the lots can be said to have been abandoned as part of the homestead under the above authorities.

It is impossible for us, though, to determine from the record before us just what portion of these lots was segregated by the giving of the deed of trust. There is certainly no evidence in the record, as far as we have been able to ascertain, showing a use of the north 50 feet of lot 2, other than for homestead purposes, and we are unable to say whether any part of lot 2, lying east of the dividing line between lots 1 and 2, was included.

Special issues 1 and 29 might be made more specific, yet we fail to see how the jury could have been misled by the manner in which they were submitted.

The remaining propositions raising questions of the sufficiency of the evidence will not, in view of the fact that the cause is to be remanded, be discussed.

The judgment vesting title in appellees to the east 40 feet of lot 2, block 3, is affirmed, and in other respects it is reversed, and the cause remanded, to be tried in accordance with the above holdings.